327 So.2d 563 (1976)
SAHUQUE REALTY COMPANY
v.
EMPLOYERS COMMERCIAL UNION INSURANCE COMPANY OF AMERICA et al.
No. 7227.
Court of Appeal of Louisiana, Fourth Circuit.
February 10, 1976.
Rehearings Denied March 16, 1976.
Writs Refused April 30, 1976.
*564 Badeaux, Discon & Cumberland, John G. Discon and J. Michael Cumberland, New Orleans, for plaintiff-appellant.
Hammett, Leake & Hammett, Craig R. Nelson, New Orleans, for defendantsthird-party plaintiffs-appellants.
Philip S. Brooks, City Atty., Gerald Stewart, Philip D. Lorio, III, Asst. City Attys., for third-party defendant-appellee, City of New Orleans.
Before GULOTTA, SCHOTT and BEER, JJ.
SCHOTT, Judge.
Plaintiff brought this suit for damages to its building at Royal and St. Peter Streets in the City of New Orleans and loss of income which it alleged resulted from construction activities of New Orleans Public Service, Inc. (NOPSI) and *565 Wallace C. Drennan, Inc. (Drennan). This is not a tort action but is based upon the liability of the proprietor flowing from LSA-C.C. Art. 667 and the recent jurisprudence concerned therewith, e. g., Hero Lands Company v. Texaco, Inc., 310 So.2d 93 (La. 1975) and cases cited therein. At the outset of the trial all parties stipulated that Drennan performed without negligence. Defendants denied liability and alternately filed a third-party demand against the City of New Orleans claiming contribution on the theory that the City was the owner of the street where the work was done with the result that the City was likewise liable under Art. 667. From a judgment in favor of plaintiff and against defendants for $20,000 and in favor of the City, dismissing the third-party demand of defendants, the plaintiff and the defendants have appealed, the former seeking an increase in damages and the latter seeking a reversal of the judgment on the main demand or at least a reduction in the damages and alternatively a reversal of the dismissal of its third-party demand.
NOPSI had contracted with Drennan for the construction of an underground vault for electric transformers on St. Peter Street just off Royal Street, directly in front of plaintiff's building. The work also involved the installation of an underground conduit running along Royal Street from St. Peter in front of plaintiff's building as well as the removal of some manholes and an old underground conduit, and the removal and relocation of underground drainage and sewage lines in the streets in front of the building. This construction involved an excavation to a depth of 15 feet to accommodate the vault transformer located less than 12 feet from the St. Peter Street side of plaintiff's building. The access to the vault was located between the vault itself and the building. The trench for the conduit along Royal Street was located within 10 feet of the Royal Street side of the building and reached a depth of 12 feet.
While the work on the transformer vault was in progress in July, 1972, cracks appeared in the stucco finish on the St. Peter Street wall of the building. As the work progressed and upon its being completed these cracks became progressively worse, completely splitting the wall in some places. The evidence is uncontradicted that shortly before the commencement of the work the exterior of plaintiff's building had been repainted. Photographs taken of the exterior in May, 1972 (prior to commencement of construction), July, 1972, and May, 1973, and the testimony of plaintiff's witnesses leave no doubt whatsoever but that some damage was caused to the building as a result of the work. The principal issue is the extent of this damage.
Plaintiff contends that the cracks were entirely caused by the work while defendants contend that there were pre-existing cracks in the building which reopened as a result of the work so that plaintiff's claim should be limited to an aggravation of this pre-existing condition. Furthermore, plaintiff contends that the building's foundation was damaged as a result of defendants' work necessitating extensive foundation repairs on the St. Peter Street side of the building, while defendants contend that the foundation requires no repairs whatsoever. Plaintiff produced an estimate from a contractor to do the repair work exclusive of the foundation to the outside and inside of the building for approximately $10,000. Defendants produced an estimate from Robert Haase, a contractor whose qualifications were readily acknowledged by plaintiff's contractor in his testimony, to do essentially the same work for $5,333. Plaintiff's contractor estimated the cost of the foundation work to be approximately $60,000, while Haase estimated the cost of the same work to be approximately $34,000. We have no difficulty finding that plaintiff was entitled to the lower estimate for the work exclusive of the foundation. Photographs of the exterior and the interior of two corner apartments on the *566 second and third floors and testimony amply support plaintiff's right to recover this sum for replastering, repainting and refinishing the interior, and retoothing the bricks on the exterior along with refinishing and repainting. The trial judge undoubtedly included in his award the $5,333 to do this work,[1] but to find a basis for the remainder of the award becomes a problem.
Defendants contend that the trial judge had to find no foundation damage at all; otherwise, he would have included the lower of the estimates for making these repairs, and that his omission from the award of $34,000 for the foundation damage requires a reduction of the judgment to the sum of $5,333. Defendants also contend that there was no evidence to support a loss of revenue beyond $140. On the other hand, plaintiff argues that since the trial judge allowed more than $10,000, which it claimed for the repairs other than foundation repairs, the trial judge necessarily found that there was damage to the foundation and since the lower estimate for the foundation repairs was defendant's $34,000 the trial court necessarily erred in awarding only $20,000. We find these approaches to be overly simplistic and under all of the circumstances of this case we are not inclined to disturb the judgment of the trial court.
We are favored with the following reasons for judgment by the trial judge:
"The Court finds: that there were cracks in the building before the construction, visible from the outside;
"That these cracks were made larger, and made to open to such an extent that they caused openings from outside through the wall and the plaster to the interior;
"That these cracks were made larger because of the construction work of the contractor;
"That there will be some disruption of tenants, and loss of revenue due to the repairs;
"There is a lack of agreement as to the extent of cost of the repairs needed.
"The Court feels that the sum of $20,000.00 would adequately compensate the plaintiffs for their damages."
In our review of the evidence we are mindful of a number of principles which are pertinent in this case. Where there is a legal right to recovery but damages cannot be exactly estimated the trial court has reasonable discretion to assess such damages based on the facts and circumstances of the case. Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151 (1971). Where damages cannot be precisely and mathematically determined the trial judge is vested with reasonable discretion in making awards for damage. Lou-Con, Inc. v. Gulf Building Services, Inc., 287 So.2d 192 (La.App. 4th Cir. 1973) writ refused 290 So.2d 899 and 290 So.2d 901 (La.1974). Where there is considerable variance in estimated damages which render calculation thereof difficult, much discretion is accorded to the trial judge to determine the amount of the award. American Ins. Co. v. Richard, 212 So.2d 481 (La.App. 3rd Cir. 1968) writ refused 252 La. 949, 215 So.2d 125. See also Nickens v. McGehee, 184 So.2d 271 (La.App. 1st Cir. 1966) writ refused 249 La. 199, 186 So.2d 159.
Plaintiff's engineering expert, Abijah W. Thompson, was of the opinion that the foundation was damaged by the work. He based this opinion on his finding two cracks in the granite beam supporting the building on St. Peter Street side parallel to the sidewalk. He also performed an inspection of the building's foundation by making an excavation of 38 inches adjacent to the building, exposing a brick step *567 foundation under the building. He found what he identified as pieces from a wooden mat which formed the bottom layer of the building's foundation. He explained that the deep excavation for the transformer vault had caused a loss of water under the building where this wooden mat was located, with the result that deterioration of the wooden mat took place which would not have occurred had the water level been left undisturbed. He found deterioration in these particles of wood found on the outside of the perimeter of the foundation but he made no further test on the wooden mat under the foundation because of the risk he felt was involved in causing it to be exposed to the atmosphere. He also opined that some of the moist alluvial soil oozed from under the foundation into the excavation causing movement in the building. He admitted that one of the cracks in the granite base pre-existed defendants' work, but had not noticed the second crack until defendants' work had started. He recommended remedial work which included shoring up plaintiff's building at the corner of St. Peter and Royal Streets, removal of exterior wall, granite base and existing foundation where necessary, installation of a new foundation for a distance of thirty-eight feet along St. Peter Street and twenty-six feet along Royal Street, and reconstruction of the exterior walls.
In opposition to this testimony, defendants produced experts, George Shrenk, an engineer, and Murvan M. Maxwell, an architect. These witnesses had elevations taken of the building from its Toulouse Street side, on Royal Street, along Royal to St. Peter Street and then along St. Peter Street to its Bourbon Street side. This revealed differential settlement of 5½ feet between the Toulouse and Royal Streets corner and the Bourbon and St. Peter Streets corner of the building on a gradual general declining line of settlement. In their investigation of the building they found that the wall along Royal Street and St. Peter Street were leaning outward, that "hogties" or braces had been installed on the Toulouse and Bourbon Street sides of the building at some point long before defendants' construction work was accomplished, and that on the inside of the building there were openings between the baseboard and the walls and between door frames and walls, which predated the construction work because of the presence of old fill in the openings. From these findings they felt that this 150 year old building had undergone settlement and movement over a long period of time. Furthermore, they were of the opinion that both of the cracks in the granite base found by Thompson predated the construction work because of the color of the granite in the cracks and the presence of dirt or debris inside the cracks. Although these witnesses felt that the foundation had been damaged by settlement prior to defendants' work, they admitted the probability of some aggravation of this damage from the work. However, they were both of the opinion that it would be unwise for plaintiff to undertake the remedial work suggested by Thompson because such drastic renovations on the foundation would only serve to set into operation additional settlement and movement of the building where a stable condition now existed.
Thus, the trial judge was confronted with this problem: If the foundation work could be accomplished with absolute success plaintiff, in effect, would be put into a better position than it was in before defendants' work because the evidence preponderates to the effect that some damage to the foundation pre-existed the work. On the other hand, because of the danger involved in attempting the work on the foundation the cure for plaintiff's problem may very well be worse than the disease in the first instance, raising the probability that plaintiff would not even attempt to perfrom the work. Mr. Thompson himself stated that even if plaintiff had the work done, which he recommended, he could not guarantee that the building would not crack any more. For these reasons the *568 trial judge was apparently indisposed to award plaintiff the full amount of either estimate and, in his discretion, awarded some fraction of the amount it would take to install the new foundation recommended by Thompson.
As to the loss of income, plaintiff's claim was based upon evidence that one of the residential tenants upstairs vacated, causing plaintiff to lose $140, and the supposition that the work recommended by Thompson would be undertaken with the result that the commercial tenant on the ground floor at the corner of the building would be required to vacate the premises for a period of about 12 weeks with resulting loss of rent of $1,100 per month. It seems likely that the renovation of the two corner apartments would interrupt occupancy of those apartments to some extent, but the award of a substantial amount for loss of income would be based largely on speculation and the trial judge probably included only a token amount for this item.
We have concluded that on the basis of the evidence and the legal principles mentioned at the outset of this discussion, the award of $20,000 was within the sound discretion of the trial judge and should not be disturbed by us on appeal.
The other issue before us is the liability of the City for contribution to defendants. They contend that the City is liable because it issued a building permit for the work and because it is the indirect beneficiary of the work which was performed. They also rely on Lombard v. Sewerage and Water Board of New Orleans, 284 So.2d 905 (La.1973) as legal authority for their demand.
At the trial the parties stipulated that the City is not the owner of the street where the work was performed. This stipulation was merely a recognition of the law. The street is common property as provided in LSA-C.C. Art. 458. The inhabitants of the City by establishing the City of New Orleans as a government entrusted to it the right to regulate the streets under the police power of the City, but they did not thereby convey ownership of the streets to the City as a corporation. In the instant case, NOPSI already had electrical facilities under the streets involved and it opted to make certain changes in the location and type of those facilities. Because the City, in the exercise of its police power, controls traffic along these streets, and because it does under its constitutional rights issue building permits for any kind of construction whether in the streets or elsewhere, it did in fact issue a permit for NOPSI and Drennan to perform this work. The distinctions between this case and the Lombard case are sufficient to justify a different result. There, the City in conjunction with the Sewerage and Water Board was constructing drainage facilities. It was the Art. 667 proprietor, not because the drainage facilities were located on a street but because the drainage facilities themselves belonged to the City and the Water Board. The court attached much significance to the effect of LSA-R.S. 33:4071 which vests ownership in the City over property or works acquired by the Water Board and which authorizes the City to expropriate property needed by the Board. Compare R.S. 19:2 which authorizes expropriation by such companies as NOPSI. In the instant case, the City has no ownership or proprietary capacity with respect to these electrical facilities or this project, and it is not an Art. 667 proprietor subject to liability along with defendants. The trial court correctly dismissed the third-party demand.
Accordingly, the judgment appealed from is affirmed, but plaintiff and defendants are each to pay their own costs of the appeal.
Affirmed.
NOTES
[1] Although the trial judge found that some minor cracks existed on the outside before commencement of the project this finding was based entirely on the photographs taken in May, 1972, which are in evidence. From our inspection of these photographs, we have concluded that defendants are not entitled to a credit against this $5,333.