386 So.2d 172 (1980)
Maxine HUKILL et al.,[1] Plaintiff-Appellant,
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY et al., Defendants-Appellees.
No. 7694.
Court of Appeal of Louisiana, Third Circuit.
June 25, 1980.
Writ Refused September 26, 1980.
Fusilier, Pucheu, Soileau & Coreil, C. Brent Coreil, Ville Platte, for plaintiff-appellant.
Gist, Methvin, Hughes & Munsterman, DeWitt T. Methvin, Jr., Alexandria, for defendants-appellees.
Before DOMENGEAUX, FORET and CUTRER, JJ.
FORET, Judge.
The plaintiff, a 42-year-old female, brought this suit seeking to recover damages for the injuries she sustained as a result of an automobile accident. The trial court determined that defendants were liable and awarded the plaintiff damages in the amount of $3,521.90.[2] The appellant brings this appeal, seeking an increase in damages. For the reasons hereinafter discussed, we are of the opinion that the trial court abused its discretion in the award given to plaintiff and same will be increased.
On February 3, 1978, the plaintiff was a guest passenger in an automobile driven by Gary M. Ray. The Ray vehicle was traveling on Louisiana Highway 112 in Rapides Parish. The automobile was traveling at a speed of approximately forty-five to fifty miles per hour. A gravel truck, driven by John C. Ulmer, made a left turn in front of the Ray vehicle, causing the accident. The truck driven by defendant, John C. Ulmer, was insured by the defendant, United States Fidelity and Guaranty Company.
*173 The plaintiff's injuries consisted of bruises, as well as multiple lacerations to her head, face and legs. The lacerations were treated and sutured at the emergency room of St. Francis Cabrini Hospital in Alexandria.
There is no apparent dispute over the special damages awarded by the trial court. Therefore, the issue on this appeal is limited to quantum for general damages. The appellant argues that the trial court abused its discretion in awarding insufficient damages considering the severity of injuries, pain, suffering, and mental anguish. We agree with appellant, and will amend to increase the trial court's judgment for reasons that follow.
The record shows that the multiple cuts which plaintiff received as a result of the accident contained numerous small particles of broken glass which had to be removed by a physician. One piece of glass was so severely embedded in plaintiff's head that it remained there for three days and could not be removed except by a physician. Plaintiff testified that the pain was so severe that she could not touch her head. Plaintiff was rendered unconscious as a result of the blow she received to her head. She remained unconscious for a short period of time immediately subsequent to the accident and prior to her being transported to the hospital by ambulance. The injuries which plaintiff received to her face and left eye required approximately one hundred twenty-five stitches. The record is replete with testimony supporting plaintiff's statement that:
"Well, I'll ... I had headaches for quite a few days afterwards. In fact I had to ... practically, live on pain pills `cause the pain was so terrific. And... my eyes bothered me quite a bit. I could ... it was blurry, like, you know, at times ...".
In June of 1978, plaintiff's family physician, Dr. Barney Fusilier, referred the plaintiff to Dr. Darrell Henderson, a plastic surgeon in Lafayette, Louisiana. Dr. Henderson performed surgery on October 10, 1978, on plaintiff's face in order to remove the scars left by the accident. Plaintiff described the scars on her face as being rough and prominent, prior to the surgery. It is undisputed that the surgery was quite successful and that there is no serious residual facial disfigurement.
Plaintiff had several bruises and scars on her legs as a result of this accident. These scars were, in the opinion of Dr. Henderson, inoperable. The record shows that there was a scar on plaintiff's left knee about one and one-half inches long. There was another cut in the right shin area, which could not be sutured, as it was too close to the bone. This cut left a scar of approximately two-and-a-half to three inches long.
For several months after the accident, plaintiff treated herself with cocoa butter or some other type of medicinal ointment in an attempt to mitigate the seriousness of the scars. In order to restore plaintiff's face as near as possible to its original condition, Dr. Henderson performed a procedure known as a dermabrasion. A dermabrasion is a surgical procedure wherein a diamond wheel, not unlike a grinding wheel used by a mechanic or carpenter, is used to grind down or bray scar tissue. This is done in an attempt to help the scar tissue to blend into the surrounding tissue. Dr. Henderson, in his deposition, described parts of the operation, stating:
"... she was given sedation through a needle in the vein in her arm, brought to the operating room where her face was washed off and sterlized [sic], as much as possible, needle injections of local anesthetic were carried out in all the areas involving the scars, which was as I said, the lower portions of thethe forehead, just above the eyebrow, the upper eyelid, the lower eyelid and the cheek area, all the places where the scars were. The diamond wheel was then used on a rotating device called a striker dermabrator.
* * * * * *
"It looked like a sanding machine that you might use in a workshop, except on a minature [sic] fashion, and very much like a carpenter would sand a piece of rough *174 wood and this is done with a sterile machine, it's very small, but it's the same principle. And all of the scarred areas were sanded, with the exception of the areas near where the letter `c' is." [referring to a photograph]
* * * * * *
"... a Z-plasty was done there which is a surgical procedure where we change the direction of a straight scar into a zig-zag scar."
On two separate occasions, the plaintiff had to endure substantial pain during the removal of sutures from lacerations she had received. The first incident was shortly after the accident whereupon approximately one hundred twenty-five sutures had to be removed. Plaintiff testified that the pain was so severe that she perspired excessively during the procedure and had to hold on to two nurses until all the stitches were removed. The second time when stitches had to be removed was after the surgery performed by Dr. Henderson.
Dr. Henderson described the scarring of the plaintiff's face and legs as follows:
"I felt that she had indeed sustained multiple lacerations and injuries from the accident and I felt that shethese scars that she had were permanent, inasmuch as any injury which lacerates the skin heals with permanent scar tissue. I did not believe that there would be any surgery that would be beneficial to her for improvement of the scars of the leg, and would recommend that these be left alone."
The record further shows that the plaintiff suffered great embarrassment from the time of the accident until the time the wounds were surgically healed. The surgery which plaintiff underwent was performed approximately eight months after the accident, and healing was not accomplished for an additional two months thereafter. Plaintiff testified that she was very embarrassed and self-conscious about scars on her face and legs and that,
"I didn't want to go anywhere. Well, I stayed out of public places for a long time till it was healed."
At the time of the trial, plaintiff had developed numerous small "beads" underneath the left eyelid which were causing her pain and discomfort. Obviously plaintiff will have to seek further medical attention in regard to this condition.
To compound matters, plaintiff was continually taking a codeine-type pain killer for the severe pain which she suffered. Additionally, she could not go out into the sun for approximately five to eight months after the surgery on the advice of Dr. Henderson. Dr. Henderson felt that exposure to sunlight may cause a change in the pigmentation of the scar tissue thereby making it worse.
After a review of this record, we are of the opinion that plaintiff will always have permanent scars which may decrease in noticeability with time. However, Dr. Henderson was of the opinion that several of the scars which plaintiff had, in particular those on her legs, could not be surgically remedied and that the only thing which would improve the coloration of this scar tissue was the passage of time.
Dr. Henderson described the surgery he performed on the plaintiff as being very delicate in that the tissues were very thin and very near the eye. In addition to the one hundred twenty-five stitches originally taken in plaintiff's face, a myriad of other sutures were required.
On the issue of damages, we observe that Civil Code Article 1934 provides, in the assessment of general damages, "much discretion must be left to the judge or jury...". The Supreme Court, beginning in Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) and concluding in the most recent case of Reck v. Stevens, 373 So.2d 498 (La.1979), has, in unequivocal language, announced the principle that before a court of appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award. See also Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976). Reck v. Stevens, supra, requires that there be an initial inquiry directed at *175 whether the trial court's award for the particular injuries and their effects upon this particular injured person, is a clear abuse of the trier of fact's "much discretion"[3] in the award of damages.[4] We have determined that there is an abuse of discretion in this case for the particular injuries and their effects on this particular plaintiff. Secondly, Reck requires that only after an in depth analysis of the facts, which analysis discloses an abuse of discretion, that an award of a trial court may, on appellate review, for articulated reasons, be considered either excessive or insufficient.
We have given a detailed and articulate description of the injuries and subsequent medical history of the plaintiff in this case. Having done so, we have fulfilled the requirements of Gaspard, Coco and Reck. This being the case, we feel a resort to prior awards as a guide in determining what would be an appropriate award for the present case is proper.
In Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971), a jury awarded $60,000.00 in general damages to a seventeen-year-old female guest passenger who had sustained painful injuries resulting in more than one hundred sutures being taken in her face. The injuries she received left her with permanent facial disfigurement and necessitated future plastic surgery. This award was reduced by the appellate court to $25,000.00. On appeal to the Supreme Court, the award was reinstated as being not excessive.
In Billeaud v. United States Fidelity & Guaranty Co., 349 So.2d 1379 (La.App. 3 Cir. 1977), we held that an award of $17,081.12 to a seventy-eight-year-old school crossing guard who, as a result of being struck by an automobile, suffered an abrasion of the left knee, multiple lacerations, fractured ribs and a bruised kidney, was within the discretion accorded to the trier of fact and would not be disturbed.
In our opinion, the scale of prior awards is nothing more than a vague yardstick which aids our appellate courts in determining a proper award. Many of these cases give merely an idea of what a "ballpark figure" is for the type of injury or injuries sustained by the plaintiff in any given case.
Here, we have reviewed the record with the admonitions of Reck and Coco in mind and have concluded that there was a clear abuse of discretion by the trial court in its award to the plaintiff. After articulating all the facts and circumstances of this case and how these injuries affect this plaintiff, we are of the opinion that the lowest award which the trial court should have made to do substantial justice to the plaintiff is $10,000.00.
For the above and foregoing reasons, the judgment of the trial court is amended by increasing the award to $10,000.00 for general damages, plus $1,021.90 for special damages, for a total of $11,021.90. The judgment, in all other respects, is affirmed.
The costs of the proceedings in this Court are assessed to the defendant-appellee, United States Fidelity and Guaranty Company.
AMENDED AND AFFIRMED.
NOTES
[1] Gary M. Ray and Glen D. Ketcherside, who were also plaintiffs herein, compromised their claims prior to trial and are therefore not involved in this appeal.
[2] The damages awarded by the trial court are itemized as follows:

Pain, suffering, and mental anguish
before surgery ------------------------ $1,000.00
Pain, suffering, and inconvenience after
surgery ------------------------------- 1,000.00
Disfigurement ------------------------- 500.00
Special damages ----------------------- 1,021.90
 _________
TOTAL --------------------------------- $3,521.90

[3] LSA-C.C. Article 1934(3)

"...
In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury, while in other cases they have none, but are bound to give such damages under the above rules as will fully indemnify the creditor, whenever the contract has been broken by the fault, negligence, fraud or bad faith of the debtor."
[4] See also Perniciaro v. Brinch, 384 So.2d 392 (La.1980).