DUFRESNE, Judge.
This is an appeal by Allvend, Inc., their employee, Ronald E. Verdón, and their insurer, St. Paul Fire and Marine Insurance Co., defendants-appellants, from a judgment in favor of Lawrence C. Neff, plaintiff-appellee, for injuries sustained by Neff when he was struck by an Allvend truck driven by Verdón. Because we find that Neff refused to undergo surgery which would have relieved his pain, and thus failed to mitigate that element of damages, we vacate the award for general damages of $100,000.00, and render judgment in the amount of $15,000.00. However, because we also find that the trial judge should not have reduced the amount of lost future wages proved by Neff, we increase that award from $110,936.00 to $221,872.79. The remainder of the judgment is affirmed.
FACTS
Because, the trial court’s determination of the defendants’ liability is not contested here, we need only state that'on April 2, 1980, Neff was struck in the head by the *1029 rear view mirror of a passing Allvend truck as he was walking along a roadway at his jobsite. He suffered a ruptured cervical disc in the accident.
At the time of the injury, Neff was employed at the Kaiser Aluminum plant in Chalmette, where he had worked for some 30 years. For the first 24 years his work assignment required substantial physical exertion. He was then transferred to the air control division of the maintenance department where the physical requirements were much lighter. However, after his transfer, he also did approximately 200 hours per year of overtime work in the masonry division of the maintenance department where the physical demands were quite heavy.
Immediately after the accident, Neff was seen at Ochsner Hospital and X-rays were taken. He was diagnosed as having arthritis in his neck. A week later he was seen by Dr. John F. Schumacher, a neurosurgeon. He complained then of numbness and “pins and needles” in his right arm. Dr. Schumacher prescribed muscle relaxants and scheduled a second appointment for April 25th. Because Neffs symptoms had not improved by the time of the second visit, the doctor recommended that he be hospitalized and placed in traction. By May 5th, Neff had still not improved, and a myelogram done on that date revealed a ruptured cervical disc.
Dr. Schumacher recommended surgery, which in his opinion would have reduced and possibly eliminated Neff’s pain. Neff declined the surgery and stated that he would prefer to continue with the present pain which he hoped would ease with time. He returned to the doctor in January, 1981, with continuing neck pain and was again advised to have the surgery, but he refused it a second time. A subsequent visit in May, 1981, showed that Neffs pain was still persisting. However, at that time Dr. Schumacher concluded that because Neff had been able to work throughout the period of treatment and seemed to be adjusting well to the pain, he no longer considered him a candidate for surgery. He also informed Neff however, that future surgery might be needed if the pain grew worse. A final visit in January, 1983, showed that Neff still experienced neck pain and occasional numbness and tingling in his right arm. Because Neff was apparently handling these problems . well, Schumacher again advised against surgery, but still considered it a future possibility.
Dr. Schumacher further stated that in January, 1981, he had given Neff a total body disability rating of between 5% and 10%. He advised against Neff doing any activities which would require repetitive use of the neck, use of heavy head gear such as a welder’s helmet, or raising more than 25 to 50 pounds overhead. Moreover, he stated that had Neff elected surgery in 1980 or 1981, his pain would have been relieved, but he would still have had the 5% to 10% total body disability and consequent work restrictions.
Except for a two week period when he was hospitalized, Neff continued to work from the time of the accident until February, 1983, when he was laid off by Kaiser because its plant was shut down.
At trial, Neff sought to prove that because of the injury he was no longer able to work overtime at Kaiser and after being laid off was limited to minimum wage jobs. His economic expert testified that the value of the lost overtime was $40,000.00, and that of lost future wages, when discounted and reduced by minimum wage earnings, came to over $220,000.00. His vocational rehabilitation expert was of the opinion that only minimum wage sedentary type jobs were available to him considering his age, experience, and work limitations.
The trial court awarded Neff $40,048.46 for lost overtime, $100,000.00 in general damages, and $2,659.51 for stipulated past medicals. He further found, however, that he was not persuaded that Neff would be relegated to minimum wage jobs, and therefore awarded only one-half of Neff’s economist’s figure for future lost wages, or $110,936.00.
Allvend, Verdón and St. Paul Fire and Marine Insurance Co. now appeal, urging *1030 four grounds for reduction of the award as follows:
1. Neff failed to mitigate his pain by submitting to surgery, and therefore he should not recover for that element of damages;
2. Since Neff was laid off at Kaiser because the plant closed, rather than because of injuries, he is not entitled to recover future lost wages;
3. There was insufficient evidence to establish that the injury caused Neff to loose overtime wages while employed at Kaiser; and
4. The award of $100,000.00 in general damages was excessive and an abuse of the trial court’s discretion.
Neff answered the appeal and urges three grounds for an increase in the award, to wit:
1. There was no evidence to support the trial court’s finding that Neff was capable of performing above minimum wage jobs, and it was error therefore to reduce his expert’s figure for lost future wages by one-half;
2. The award for general damages was insufficient;
3. Future medical expenses should have been awarded.
We first take up the question of the $100,000.00 general damages award. In Pisciotta v. Allstate Ins. Co., 385 So.2d 1176, 1182 (La.1980), the court held that “a plaintiff must minimize his damages by submitting to reasonable corrective surgery necessary to eliminate any permanent disability”. The injury in that case, as in the case before us was a ruptured cervical disc, and there as here, the plaintiff refused to undergo surgery.
Dr. Schumacher stated that the proposed surgery generally resulted in very good results, and that it would very likely have reduced or eliminated Neff’s pain. Because Neff refused to mitigate his pain, we hold that it was legal error for the trial ' court to have awarded $100,000.00 for that element of damages. We also note, however, that Neff is entitled to some award of general damages for his pain between the accident and the first recommended surgery, as well as for the limitations on his outdoor activities caused by the injury. We do not know what figure the trial court would have reached, however since we have a complete record before us upon which to base an award, we hereby fix general damages at $15,000.00.
Appellants second contention is that because Neff was not laid off because of his injury, but rather because the plant where he was employed closed, he is not entitled to recover lost future wages. However, the reason that Neff lost his job is irrelevant in this factual context. What is pertinent is the effect that the injury had on his ability to earn a living, Folse v. Fakouri, 371 So.2d 1120 (La.1979). The undisputed testimony of Neff’s vocational rehabilitation expert was that in her opinion, a person of Neff’s education, work experience, age and physical limitations, would be restricted to minimum wage jobs in the area economy. She also stated that but for his physical limitations, he could in all probability find employment at a salary comparable to that which he received at Kaiser. In this court’s opinion, the injury directly caused a quantifiable loss in his earning capacity, and he is entitled to compensation for that loss of future earnings.
This brings us to the amount of lost future wages. Neff’s economic expert calculated that Neff had a work expectancy of over 10 years at the time of trial. He subtracted the minimum hourly wage from Neff’s wage at Kaiser, and used that figure to project lost future wages. After discounting this amount he arrived at a figure of over $220,000.00. Appellants called no expert of their own to refute this figure.
The trial court, nonetheless, decided that because Neff had shown such persistence in continuing work at Kaiser, even though in pain, he could probably find a job at above minimum wage. He therefore reduced the economist’s figure by one-half. *1031 Although factual findings by the trier of fact will not be disturbed absent manifest error, we find that such an error occurred here. The only evidence in the record concerning jobs available to Neff was the testimony of the vocational rehabilitation expert. She stated that she is quite familiar with the job market in the area. In her case load she also has a number of people with injuries similar to Neff’s, and therefore keeps a current up to date listing of jobs and employers where these people might find employment. Her conclusion as to Neffs employability was reasonable and unrefuted by any other evidence appearing in the record. Under these circumstances, we can only conclude that the trial court erred in partially rejecting her testimony and finding that Neff could find a higher paying job. Because of this error, the trial court reduced future wages by one-half. We, therefore, hold that the proper award for lost future wages is $221,872.79.
The next issue concerns loss of overtime pay while Neff was still working for Kaiser. Neffs economist testified that in reviewing Kaiser’s payroll records he determined that Neff had worked an average of 5 hours of overtime per week, and that after the accident and until the lay-off, this figure decreased to 0.7 hours per week. He therefore calculated lost overtime on the basis of 4.8 hours per week. The final figure for this loss was some $40,000.00.
The next question in this regard was whether Neff proved that the accident caused this loss of overtime. We find that he did. John Chabreck, the maintenance foreman at Kaiser, testified that prior to the accident Neff regularly worked overtime, but that afterwards he hardly did so. He also stated that there was always overtime work available in his masonry maintenance department and that Neff was available for that work. In addition, all maintenance personnel, including Neff, had to be offered overtime work on a rotating basis, which the workers could accept or decline. He finally stated that overtime work continued to be available up until the plant was shut down and Neff was laid off.
Neff’s testimony was that his regular maintenance job was not physically demanding, but that most overtime work involved masonry which was quite demanding. He further stated that after the accident he could not handle masonry work, and therefore had to decline overtime when it was offered to him in the rotation system.
On this showing, there is no manifest error in the trial court’s conclusion that Neff’s loss of overtime pay was directly attributable to the accident. Similarly, it was not error to accept the figure provided by Neff’s expert. The only contrary evidence offered by appellants as to this amount was the testimony of their expert, who offered figures of between $25,000.00 and $28,000.00. However, this expert stated that his calculations were made in August, 1982, and were therefore not current. Since by his own admission, his figures did not accurately reflect Neff’s lost overtime wages up to the time of trial, the trial court was correct in rejecting these figures, and relying instead on those provided by Neff’s economist.
The final issue here is whether Neff should have been awarded future medical expenses. We agree with the trial court that he should not. In his reasons for judgment the trial court stated that he did not believe that Neff would ever submit to surgery, and therefore declined to make an award for this item of damages. We find no error in his conclusion.
For the foregoing reasons, we vacate the $100,000.00 award for general damages and render judgment in the amount of $15,-000.00 for this item of damages. We amend the award of $110,936.00 for lost future wages by increasing it to $221,-872.79. In all other respects the judgment is affirmed.
AFFIRMED IN PART, AMENDED IN PART AND RENDERED AS AMENDED.