542 So.2d 731 (1989)
James LANDY, individually and on Behalf of his minor child Sonya LANDY and Pamela Landy
v.
Edward SMITH and Dairyland Insurance Co.
No. 88-CA-1663.
Court of Appeal of Louisiana, Fourth Circuit.
April 13, 1989.
*732 William F. Kelly, Lightfoot & Kelly, Metairie, for appellants.
Anna M. Washburn, Edward P. Comeaux, New Orleans, for appellees.
Before BARRY, LOBRANO and WILLIAMS, JJ.
LOBRANO, Judge.
This is an appeal from a judgment awarding damages to four year old Sonya Landy and her mother, Pamela Landy, as a result of injuries they received in an automobile accident on April 6, 1986 when their vehicle was struck by a vehicle driven by Edward Smith. Smith was found to be 100% liable for the accident and judgment was rendered against him and his insurer, Dairyland, in favor of Sonya Landy in the amount of $4,500.00, and Pamela Landy in the amount of $9,732.21 inclusive of $687.21 in medical costs and $45.00 in lost wages.
Smith and Dairyland perfect this appeal asserting the trial court abused its discretion in awarding excessive amounts not supported by the evidence. No appeal has been taken from the trial court's finding of liability. We disagree that the damage awards are excessive.
In his reasons for judgment the trial judge stated:
"I viewed the child's scar in chambers and it is visible but not particularly disfiguring. Her [Sonya Landy's] damages are fixed at $4,500.00.
Mrs. Landy [Pamela Landy] suffered ten months following the accident. She has not exaggerated her complaints or padded the claim. Her damages are set at $9,000.00 plus specials of $687.21 in medical expenses and $45.00 in lost wages."
In assessing damages the trier of fact is afforded much discretion. La.C.C. Art. 2324.1 And, a damage award will not be disturbed by this court unless there is a clear abuse of that discretion. Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967). Once this court determines there *733 was an abuse of discretion, the award may be lowered (or raised) to the highest (or lowest) point within the trial court's discretion. Coco v. Winston Industries, 341 So. 2d 332 (La.1976).
In order to determine if there the trial court abused its great discretion, this Court must look to the particular facts and circumstances peculiar to this case and not necessarily at prior awards. After an articulated analysis of the facts discloses an abuse of discretion, this Court may consider the award to be inadequate or excessive. Reck v. Stevens, 373 So.2d 498 (La.1979); Jackson v. Evans Cooperage Company, 459 So.2d 699 (La.App. 4th Cir.1984).
In support of their argument of excessive damages, appellants not only rely on the evidence submitted at trial, but attempt to inject pre-trial settlement figures which are not part of the record. Discussions during pre-trial, not recorded in the record, are never to be used to support a requested change of quantum. Appellants' attempt to do so was improper and should be stricken.
Our review of the evidence shows that Sonya struck her nose on an unknown object inside the car causing bleeding and swelling. She was taken to Jo Ellen Smith Hospital. Further examination revealed a laceration on the bridge of her nose for which she received four sutures, and a laceration of the columella (the area between the nostrils) which could not be sutured because of its location. X-rays revealed a possible non-displaced fracture of the nasal bone.
Several days later, on April 11, 1986, Sonya was examined by Dr. E.B. Ross, an ear, nose and throat specialist, to diagnose whether she had sustained an non-displaced fracture. Dr. Ross stated that the x-ray taken at the hospital showed something resembling a crack which may or may not be a non-displaced fracture. His own examination did not reveal a fracture. He testified that he did not overly concern himself with whether Sonya had sustained a non-displaced fracture as this type of fracture is clinically unimportant because there is no treatment. Non-displaced fractures heal over time. He stated that he expected Sonya to experience discomfort from the soft tissue injury for two to six weeks. The laceration was expected to heal in about six weeks. He further testified that Sonya would have a scar on the bridge of her nose from the sutures and possibly one on the end of her nose from the laceration of the columella. He advised Mrs. Landy to keep Sonya out of the sun during the summer to minimize the scaring.
Pamela Landy testified that Sonya was extremely bothered by the scar. She kept needing reassurance that the scar wasn't going to be permanent and that she would be beautiful. In addition, Mrs. Landy testified that Sonya often complained of pain especially if her nose was "knocked".
Considering the child's injuries, and the possibility of facial scars, we find no abuse of discretion in the trial court's award of $4,500.00.
Smith and Dairyland argue that Pamela Landy's award is not supported by the evidence because she did not complain of injury until after consulting with her attorney some six months after the accident. They argue that this lapse in time between the accident and treatment indicates that there must have been some intervening cause of her injury. We find no merit to this argument.
The uncontradicted testimony at trial clearly reflects that Mrs. Landy awoke the morning following the accident with headache, pain and stiffness in her neck and shoulders. She called the Navy dispensary (Mrs. Landy's husband was a member of the United States Navy at the time of the accident) and was given an appointment for April 11, 1986. Following examination by the Navy physician, Dr. M.L. Michelli, Mrs. Landy was given a prescription for a muscle relaxer. She was told that this type of injury would heal over time.
She testified that the medication eased her pain enough so that she could return to work after a few days. However, she stated that she was unable to do any heavy lifting, pushing or pulling. She testified *734 that she was able to renew the prescription for several months. She was referred to Dr. L.S. Kewalramani, an orthopaedist, after the prescription was exhausted and she still experienced pain and discomfort.
Dr. Kewalramani testified that it is not at all unusual with this type of injury to find spasm lasting over a six month period. He stated that he found numerous objective signs of physical injury consistent with a six month old trauma. These included an increase in tissue turgescense; pain radiating to the neck and shoulders aggravated by motion of the head and neck especially on extension and rotation; limitation of 20% on flexion and extension and 15-20% on rotation; bilateral mild spasm of the paraspinal muscles along with spasm of the left supra-spinati and trapezins muscles; tenderness at C4-5-6 spinal processes as well as T3 and T4 spinal processes; and decrease in the lordosis curve and sclerosis along the anterior inferior angle of C4 and C5 with lipping along the anteriorsuperior angle of C6 spinal processes indicating spasm of the paraspinal muscles due to the application of force in which the head and neck were bent forwards. He testified that these symptoms were consistent with the kind of trauma sustained by Mrs. Landy. These physical manifestations indicate musculoligamentons syndrome.
Mrs. Landy was treated from October 23, 1986 until February 2, 1987 when she was discharged. Her treatment consisted of heat packs, analgesic creams, anti-inflammatory drugs and muscle relaxers.
After hearing all the evidence and viewing the demeanor of Mrs. Landy and Dr. Kewalramani, the trial judge found that Mrs. Landy suffered for ten months following the accident and that she did not exaggerate her complaints or "pad the claim". We find no abuse of discretion in the trial court's award of $9,732.21 to Mrs. Landy.

FRIVOLOUS APPEAL
We reject plaintiff's request for frivolous appeal damages. See, La.C.C. Proc. Art. 2164. The issues raised by defendants are legitimate, and in good faith. See, Sherman v. B & G Crane Service, 455 So.2d 1275 (La.App. 4th Cir.1984).
Defendants to pay the cost of this appeal.
AFFIRMED.