KLIEBERT, Judge.
The defendant-appellant, United Services Automobile Association (USAA), appeals from a jury award to plaintiff-appellee, Linda Bergez, of $103,000.00 ($98,500.00 general damages and $4,500.00 medicals) for injuries sustained in an automobile accident. At the conclusion of the trial, USAA filed a motion for a directed verdict based on the contention Bergez’s complaints of severe, painful and chronic pain were not caused by the accident sued on. The motion was denied. Two issues are urged on the appeal: (1) Was USAA, who is Bergez’s *445 underinsured motorist carrier, entitled to a credit against the award for $10,000.00 previously paid to Bergez by Champion, the insurer of the tortfeasor in the accident, and (2) Is Bergez’s complaint of pain and disability the result of injuries sustained in the accident and, if so, was the $98,500.00 general damage award excessive? For the reasons which follow we amend the judgment to provide credit for the $10,000.00 and, as amended, affirm the judgment of the trial court.
Prior to trial the parties, through counsel, stipulated that (1) Kenneth Simmons collided into the rear of Bergez’s vehicle; (2) Simmons was insured by Champion under a policy having limits of $10,000.00; and (3) Champion had exhausted the $10,-000.00 limits by payments to Bergez. The trial judge agreed the $10,000.00 would be subtracted from any award granted, but the judgment appealed from did not provide for the credit. On appeal Bergez agrees USAA is entitled to the $10,000.00 credit. Accordingly, we will amend the judgment to provide for the credit to USAA.
At the time of the accident on January 9, 1986, Bergez was 41 years old and employed as a teacher at Ecole Classique. At the time of trial on March 8, 1989, she had missed approximately 22 days of work but was still employed there as a teacher. She had a prior accident history of headaches for which she had been treated by her chiropractor, Dr. Marilyn Panger, for several years.
Bergez testified that after the accident, she felt pain in her neck when she got home, so she went to the Browne-McHardy Clinic for examination and treatment. X-rays were taken and medication prescribed. According to Bergez, on the following day she could not move her neck and was in excruciating pain.
One week later, on January 17, 1986, Bergez saw her chiropractor, Dr. Panger. At that time, according to Dr. Panger, she could not test plaintiff’s “range of motion” since her neck and cervical spine were rigid and unable to move. Such symptoms, to her, indicated irritation of soft tissue with torn muscles and ligaments from a severe hyperextension injury (whiplash). The x-rays taken that day in Dr. Panger’s opinion revealed subluxation (misalignment of vertebrae) of C-6 and C-7, causing irritation of the nerves and osteoarthritis. X-rays prior to the accident did not show a misalignment.
Dr. Panger treated plaintiff for two years after the accident (ultrasound, cervical collars, massage, spinal adjustments) and saw her approximately 59 times. Even though plaintiff was asymptomatic at some visits, in her view this did not mean that her injuries had healed. In fact, she said plaintiff was asymptomatic on her last visit; nevertheless, in her opinion she would continue to suffer from these problems on a permanent intermittent basis and ultimately would require surgery to alleviate the problem.
Although Dr. Panger had treated Bergez for migraine headaches and occasional jaw and facial pain prior to the accident, in her opinion her symptoms did not become chronic until after the accident and the severity of the pain became much greater after the accident. She further expressed the view that the severity and frequency of Bergez’s headaches, muscle pains, neck and shoulder pains were caused by the injuries she sustained in the January 9, 1986 accident.
On March 24, 1986 plaintiff saw Dr. John Watermeier, an orthopedic surgeon, for evaluation and treatment. According to him, at this examination Bergez had a full range of motion in the neck and shoulders, no muscle spasms, and a normal upper back; however, at subsequent visits the disability and pain scenario varied. In his opinion, this was not unusual for a person with Bergez’s problems. X-rays taken under his direction indicated some mild arthritis of the neck, which he felt probably predated the accident, but in his view its existence predisposed her to more pain and discomfort after the accident. In time Dr. Watermeier concluded that even though she had a prior history of migraine headaches and pre-existing arthritis, Bergez had sustained a cervical disc injury in the acci *446 dent and her pre-existing conditions had been aggravated by the accident. Medication was prescribed (most of them gave Bergez problems, including nausea, swelling, etc.) as well as a home exercise program, cervical traction, and physical therapy. In subsequent months, a CAT Scan, MRI, and thermogram were performed. Bergez continued to complain of intermittent periods of intense pain, which the doctor felt was normal with a hyperextension (whiplash) injury. Dr. Watermeier stated that he thought plaintiff was telling the truth. He suggested that plaintiff have a discogram performed (an invasive procedure, to determine whether or not surgery will be necessary). This test had not been conducted by the time of trial.
Dr. Watermeier opined that it was more probable than not that all of Bergez’s prior-accident problems were now permanently and seriously aggravated and made more symptomatic by the accident. Thus, the accident increased the severity, frequency and permanency of plaintiffs headaches. At the time of trial, Bergez was still under Dr. Watermeier’s care. According to his prognosis she would continue to suffer on an intermittent basis and this would cause a substantial limitation of her activities.
In preparation for trial, Dr. James Williams, an orthopedic surgeon, examined Bergez at the request of USAA on April 22,1988. He studied prior medical records, test results, and also physically examined Bergez. He testified that Dr. Watermeier’s medical records indicated neck strain, and the CAT Scan and x-rays showed evidence of spondylosis (degenerative change) which did not occur on the date of the accident. With no objective findings and only subjective complaints of pain, Dr. Williams’ diagnosis was strain of plaintiffs neck ligaments, which injury should have resolved itself within six weeks to three months.
Plaintiff’s husband testified that they had been married for 22 years. Plaintiff was in so much physical discomfort during the first year following the accident that she often fought with her husband and children, affecting family harmony. Her husband had to assume most of the domestic duties such as shopping, cooking, etc. He further testified that plaintiff is no longer fun-loving and interested in doing anything like going to LSU games. Since the accident, she frowns a lot, complains about her neck, and prefers to stay in bed. Whereas, the husband felt close to his wife before the accident and their marital relations were good, this is no longer the case.
Plaintiff’s daughter also testified that she and her mother are not as close as they were prior to the accident, that her mother is temperamental, quick tempered and gets upset easily. She and her mother used to do a lot more together, like going to the mall, movies, and concerts. Since the accident, her mother seems to be in bed a lot. The family fights more now, whereas, they used to be closer. Prior to the accident, her mother had migraine headaches about once a month, but they were not as debilitating as her current problems which now include neck pain. Her daughter reported that about once a month her mother complains of migraine headaches accompanied by neck pain which cause her mother to go to bed for 48 hours. Because of the severity of the current attacks, the children have had to take on a lot more responsibility, such as, washing, cooking, and cleaning.
In Riley v. Winn-Dixie Louisiana, Inc., 489 So.2d 931 (5th Cir.1986), writ denied, 494 So.2d 329 (La.1986), at page 935, this Court explained the standard we are required to follow in reviewing this type of case:
“[3] Unlike a bench trial (where the trial judge furnishes us with written reasons and hence the basis for his findings or conclusions), in a jury trial we never know why the jury found as it did or reached the conclusions it did. Nevertheless, although Louisiana appellate courts have jurisdiction over both law and facts, unless for articulable reasons we find manifest error, our standard of review is limited to determining whether there was evidence before the trier of the fact which, upon its reasonable evaluation of credibility, furnishes a factual basis for the fact finder’s findings. Can *447 ter v. Koehring, 283 So.2d 716 (La.1973). Under this standard of review, we are not at liberty to substitute our findings for those of the fact finder, although we believe they may be as reasonable or more reasonable than those of the initial fact finder. Rather, where the evidence before the trier of fact furnishes a reasonable basis for its finding, we are duty bound to uphold its findings. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).”
Furthermore, the Louisiana Supreme Court recently addressed the manifest error-clearly wrong standard to be used by a reviewing court in Rosell v. Esco d/b/a Jolly Elevator Corp., 549 So.2d 840 (La.1989) and at page 844 said: “Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong.” Here the jury could accept the views of the defendant’s expert, Dr. James Williams, or that of Bergez, her family and her experts, Dr. Panger and Dr. Watermeier. For whatever reasons, they chose to side with the plaintiff.
Given the circumstances here and applying the required standard of review, we cannot say the jury erred in accepting Ber-gez’s witnesses’ opinion that Bergez sustained an injury in the January 9, 1986 accident which has caused and will continue to cause her severe pain, discomfort and permanent disability.
In a case such as this, calculation of the damages is difficult; hence, much discretion is accorded to the trial court to determine the amount of the award. Smith v. Logansport, 395 So.2d 888 (2nd Cir.1981); Sahuque Realty Co. v. Employers Commercial Union Ins. Co. of America, 327 So.2d 563 (4th Cir.1976), writ denied, 330 So.2d 617 (La.1976); American Ins. Co. v. Richard, 212 So.2d 481 (3rd Cir.1968) writ denied, 252 La. 949, 215 So.2d 125 (La.1968).
The appellant correctly cites the case of Reck v. Stevens, 373 So.2d 498 (La.1979), for the proposition that “a reviewing court must look first, not to prior awards, but to the individual circumstances of the present case.” Although perhaps higher than the amount we would award, applying the standard of review required by Reck v. Stevens, supra, we cannot say the jury erred in making the award for general damages made here.
Accordingly, we amend the trial court judgment to read as follows:
“....IT IS ORDERED, ADJUDGED AND DECREED that judgment be rendered herein in favor of Linda Bergez and against United Services Automotive Association in the total amount of $93,000.00 ($103,000.00 jury award less $10,000.00 credit for payment by Champion), plus judicial interest from the date of demand and for all costs of these proceedings, representing Ninety-Eight Thousand Five Hundred ($98,500) Dollars award for pain and suffering, mental anguish and distress and a Four Thousand Five Hundred ($4,500) Dollars for past medical expenses, minus the heretofore stipulated deduction of $10,-000.00.”
AMENDED AND, AS AMENDED, AFFIRMED.