569 So.2d 97 (1990)
Maria WEAVER, et al.
v.
Fred D. SIEGLING and Winn Dixie of Louisiana, Inc.
No. 89-CA-2380.
Court of Appeal of Louisiana, Fourth Circuit.
October 11, 1990.
Writ Denied January 4, 1991.
*98 Laurence Cohen, New Orleans, for plaintiffs/appellees.
Paul M. Lavelle, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, for defendants/appellants.
Before WARD, ARMSTRONG and BECKER, JJ.
BECKER, Judge.
This appeal arises from litigation concerning a vehicular collision which occurred on April 30, 1986. A Winn Dixie tractor-trailer, driven by Fred Siegling, ran a red light and struck plaintiff's vehicle broadside, injuring plaintiff, Maria Weaver, plaintiff's daughter, Archelle Johnson, and Gregory Holmes.[1] Winn Dixie stipulated to liability prior to trial. The only issue to be determined at trial were the amount of damages sustained by the plaintiffs.
After a trial on the merits, the jury awarded Maria Weaver general damages of $150,000.00 and medical expenses of $11,000.00. The parties had stipulated that Ms. Weaver's lost wages were $3,143.00. The jury awarded Archelle Johnson $65,000.00 in general damages and $4,000.00 in medical expenses.
Defendants now appeal, seeking a reduction in the damage awards. They specifically allege that
(1) the trial judge erred in denying their motion for a new trial;
(2) the damage award in favor of Maria Weaver is excessive and not supported by the evidence;
(3) the damages awarded to Archelle Johnson are excessive and not supported by the evidence; and
(4) the trial court erroneously allowed speculative testimony concerning surgery thereby tainting the jury's damage award.
In support of plaintiff's claim for damages, evidence was presented that Maria Weaver was struck in the head by the Winn Dixie tractor trailer and rendered unconscious. Mrs. Weaver was taken to Charity Hospital via ambulance and treated for a concussion and lacerations to her scalp and left elbow. Archelle Johnson was also taken to Charity Hospital, where she was treated for multiple lacerations of the face, mouth and arms and a hematoma to the hip.
Maria Weaver and her daughter, Archelle Johnson, were initially treated by Dr. Julius Isaacson. Dr. Isaacson testified that when he first saw Ms. Weaver she complained of headaches and pain in the neck, left shoulder and left arm. His diagnosis was that Mrs. Weaver suffered from a cerebral concussion, multiple lacerations and cervical sprain. Dr. Isaacson referred Ms. Weaver to Dr. Aaron Friedman, a neurologist, when her complaints did not subside.
Ms. Weaver saw Dr. Friedman on June 19, 1986 complaining of headaches, dizziness, tingling in fingertips of the left hand, numbness of the left arm, occasional blurred vision, and insomnia. Dr. Friedman testified that the plaintiff had suffered a concussion in the accident, and was suffering from post-concussive syndrome, and cervical spasm. A catscan performed on the plaintiff showed no abnormalities. Ms. Weaver was released to the care of Dr. Bernard Manale on January 14, 1988.
During this same period of time, Ms. Weaver was also being treated by Dr. Philip Jones, a general practitioner. Dr. Jones testified that plaintiff had sustained head trauma with lacerations and concussive syndrome, multiple contusions, and cervical and lumbar strain. He prescribed physical therapy to relieve the cervical and lumbar strain which plaintiff underwent for approximately four months.
Dr. Bernard Manale, an orthopedic surgeon, began treating Ms. Weaver on July 30, 1986. Upon examination, Dr. Manale found that plaintiff had cervical and lumbar sprain. X-rays taken at that time did not show any fractures or dislocations. An EMG and nerve conduction study on April 1987 suggested some evidence of cervical nerve root irritation. However, a catscan also performed at that time was normal.
*99 In January 1988, plaintiff underwent a MRI which suggested possible mild posterior bulges at C3-4, and C4-5. However, these findings were not conclusive. Dr. Manale testified that a discogram was necessary to confirm these findings. Dr. Manale further testified that if the discogram did show bulging discs, then surgery would possibly be required. He also suggested that the plaintiff should get a second opinion before deciding on the need for surgery. Ms. Weaver testified that, at the time of trial, she had not yet obtained a second opinion nor undergone the discogram. Plaintiff was still under the care of Dr. Manale at the time of trial. Dr. Manale indicated that, at the time of the trial, plaintiff had a ten to fifteen percent physical impairment.
Ms. Weaver was also treated by Dr. Chester Scrignar, a psychiatrist. Dr. Scrignar testified that the plaintiff was suffering from post-traumatic stress disorder with secondary depression. He opined that Ms. Weaver should have weekly therapy visits for one year and then semi-annually or annually for the rest of her life.
Dr. Scrignar also examined Archelle Johnson, and found Archelle to be suffering from an adjustment reaction to the accident. He also testified that Archelle was self-conscious about the scars on her forehead and lip.
Dr. Delgado, a plastic and reconstructive surgeon, testified that surgical revision on the scars would reduce the prominence and disfiguring nature of the scars. The total cost for such surgical treatment would be approximately $2,800.00.
The scar on Archelle's forehead extended vertically near the edge of the right eyebrow to just past the center of the forehead, and was approximately one-fourth of an inch in width. The scar on her lip crossed the fat part of the lip and was three-eighths of an inch in length and one-sixteenth of an inch in width.
Dr. Gernon Brown, an orthopedic surgeon, examined Ms. Weaver on behalf of the defendants. He testified that he found no objective signs of disc disease. Dr. Brown did acknowledge the presence of mild bulging at the C3-4 and C4-5 levels on plaintiff's MRI scan. However, he believed that this bulging was not trauma-induced but simply variations of the norm for a twenty-nine year old woman. He stated that Ms. Weaver did not need any further treatment or surgery. Defendants also had Dr. Richard Roniger, a psychiatrist, examine plaintiff on May 1, 1989. Dr. Roniger testified that he found no psychiatric illness and believed plaintiff may have exagerated or fabricated her symptoms.
Defendants argue that, in light of this evidence, the judgment rendered is not supported by the evidence, and therefore, the trial judge erred in denying their motion for a new trial. L.S.A.-C.C.P. article 1972 provides in pertinent part that "a new trial shall be granted, ..., when the verdict or judgment appears clearly contrary to the law and the evidence." Absent an abuse of discretion, an appellate court will not disturb the trial court's denial of a new trial.
A review of the trial record clearly indicates that the jury's awards for pain and suffering are clearly contrary to the law and evidence. The awards for pain and suffering for both Maria Weaver and Archelle Johnson are clearly excessive. However, the amounts awarded for medical expenses, past, present and future, are supported by the evidence. Therefore, we must find that the trial court erred in failing to grant defendants a new trial on the general damages. A remand, however, is not necessary. There is sufficient evidence in the record for this court to determine the appropriate general damages.
The standard of appellate review of general damages was enumerated in Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). An appellate court may disturb an award made by a trial court only if the record clearly reveals that the trial court abused its much discretion. Only then may the appellate court lower or raise the award to the highest or lowest amount reasonably within the discretion afforded the court. Coco, supra; at 335. Harris v. Doucette, 539 So.2d 997 (La.App. 4th Cir. 1989); Landy v. Smith, 542 So.2d 731 (La. App. 4th Cir.1989).
*100 In order to determine if the trial court abused its great discretion, the appellate court must look to the particular facts and circumstances of the case before it. Only after a determination of abuse has been made, is a resort to prior awards appropriate under Coco v. Winston Industries, Inc. for purposes of determining what would be an appropriate award for the present case. Reck v. Stevens, 373 So.2d 498 (La.1979); Jackson v. Evans Cooperage Company, 459 So.2d 699 (La.App. 4th Cir.1984).
The medical testimony presented reveals that Maria Weaver suffered a concussion and multiple lacerations immediately following the accident. Dr. Friedman testified that Ms. Weaver also suffered from post concussion syndrome. Plaintiff also continued to suffer and receive treatment for cervical and lumbar sprain with Dr. Manale until the time of trial. Dr. Manale testified that, as a result of her injuries, plaintiff had ten to fifteen percent permanent disability. Dr. Scrignar, plaintiff's psychiatrist, indicated that plaintiff had post-traumatic stress disorder with secondary depression. Dr. Scrignar suggested that plaintiff continue with weekly therapy sessions for one year.
Archelle Johnson suffered multiple lacerations to the head, face, and arms, and a hematoma to the hip as a result of the accident. The lacerations healed well but left permanent and disfiguring scars on Archelle's forehead and lip. Dr. Delgado, a plastic surgeon, testified that revision surgery would reduce the prominence of the scars. Dr. Scrignar testified that Archelle suffered an adjustment reaction from the accident, and was self-conscious about the scars. In addition, Archelle suffered substantial mental distress immediately following the accident when she saw her mother unconscious and covered with blood. The anxiety was increased when she was separated from her mother at Charity Hospital.
In Landy v. Smith, 542 So.2d 731 (La. App. 4th Cir.1989), the appellate court affirmed an award of $4,500.00 to a four year old child who suffered a laceration and scar on the nose, and a possible nondisplaced fracture of the nose. The Third Circuit Court of Appeals, in Hukill v. United States Fidelity and Guaranty Co., 386 So.2d 172 (La.App. 3rd Cir.1980), writ denied, 392 So.2d 664 (La.1980), increased plaintiff's general damage award from $2,500.00 to $10,000.00. The plaintiff had been rendered unconscious from a blow to the head and sustained multiple lacerations to the head, face and legs. The lacerations required one hundred twenty five stitches.
The plaintiff, a forty-three year old man, in Red v. Taravella, 530 So.2d 1186 (La. App. 2nd Cir.1988), sustained several lacerations to his face and index finger, as well as a hematoma to the upper thigh. The facial scars were noticeable but not grossly disfiguring. The appellate court reduced the damage award from $20,000.00 to $10,000.00. In Morvant v. Smith, 463 So.2d 75 (La.App. 3rd Cir.1985), the appellate court affirmed an award of $17,500.00 to a child who incurred lacerations and scars on the face and shoulders. The lacerations required sixty-nine stitches. It was noted that the scars could be corrected by surgery. In light of these cases, we find that the highest amount we can reduce the award for Archelle Johnson's pain and suffering to is $25,000.00. Accordingly, the trial court's award for pain and suffering is reduced from $65,000.00 to $25,000.00.
Similar cases in which the plaintiffs have sustained injuries similar to those of Maria Weaver have awarded general damages in the range of $36,000.00 to $100,000.00. In Redondo v. Consolidated Freightways Corp., 529 So.2d 1296 (La.App. 4th Cir. 1988), writ denied, 533 So.2d 363 (La.1988), the plaintiff sustained a ruptured disc at the L5-S1 level and was assessed a fifteen percent partial lower body disability. The appellate court affirmed an award of $100,000.00 for general damages.
The Second Circuit Court of Appeals, in Jinks v. Wright, 520 So.2d 792 (La.App. 3rd Cir.1987), reinstated the jury's award of $62,000.00 after the trial court had raised it to $110,695.01. The plaintiff underwent a laminectomy at the L5-S1 level and arthoscopic surgery to the knee. A *101 permanent partial disability rating of ten percent was assessed by the plaintiff's physician.
The plaintiff in Lewis v. Macke Building Services, Inc., 524 So.2d 16 (La.App. 5th Cir.1988), writ denied, 532 So.2d 131 (La. 1988), underwent fusion surgery for two ruptured discs. Plaintiff was assessed a fifteen percent whole body anatomical impairment. The appellate court reduced the general damage award from $525,000.00 to $125,000.00.
An award of $95,000.00 in general damages to a plaintiff who underwent a laminectomy for herniated lumbar disc and had a ten to fifteen percent disability rating was affirmed by this Court. Naman v. Schmidt, 541 So.2d 265 (La.App. 4th Cir. 1989). The plaintiff in Naman also sustained a minor shoulder separation.
The Fifth Circuit Court of Appeals reduced an award of $100,000.00 to $15,000.00 when the plaintiff failed to mitigate his damages by having surgery. Neff v. Allvend, Inc., 474 So.2d 1027 (La.App. 5th Cir.1985), writ denied, 478 So.2d 148 (La. 1985). The plaintiff in Neff sustained a ruptured cervical disc and was assessed a five to ten percent disability rating. Plaintiff's physician testified that surgery was recommended but plaintiff had not undergone the surgery.
In Aisole v. Dean, 560 So.2d 647 (La. App. 4th Cir.1990), this Court affirmed an award of general damages of $55,000.00. The plaintiff in that case suffered acute cervical and lumbo-sacral strain, headaches, right hip joint strain, chest wall contusion and a bladder infection. The plaintiff was able to return to work seven months after the accident.
The Fifth Circuit Court of Appeal in Bergez v. Simmons, 557 So.2d 444 (La.App. 5th Cir.1990), writ denied, 561 So.2d 120 (La.1990), affirmed the general damage award of $98,500.00 for plaintiff's pain and suffering, mental anguish and distress relating to cervical injuries caused by the accident. The plaintiff complained of headaches, in addition to cervical and lumbar strain. She was absent from her employment twenty-two days as a result of these injuries. Further, like the plaintiff in the present case, it was recommended that Ms. Bergz undergo a discogram.
Therefore, we amend the $150,000.00 general damage award granted to Ms. Weaver and reduce it to $100,000.00, which is the highest amount reasonably within the discretion of this court under the facts and circumstances of this case.
Accordingly, the judgment of the trial court is amended to reduce the general damages awarded to Ms. Weaver from $150,000.00 to $100,000.00, and the award granted to her daughter, Archelle Johnson, from $65,000.00 to $25,000.00. The special damages awarded plaintiffs by the trial court is hereby affirmed.
AFFIRMED IN PART; AMENDED IN PART.
NOTES
[1] Mr. Holmes' claim was settled prior to trial.