461 So.2d 1107 (1984)
Richard B. LANDAICHE
v.
LOU-CON, Payne & Keller of La., Inc., Payne & Keller, Inc., National Standard Insurance Co., KTM Industries and Goulds Pumps.
Nos. 84-CA-31, 84-CA-32.
Court of Appeal of Louisiana, Fifth Circuit.
December 11, 1984.
Rehearings Denied January 17 and January 29, 1985.
*1108 Milton E. Brener, Gary M. Pendergast, Herbert J. Garon, Garon, Brener & McNeely, New Orleans, for Richard B. Landaiche plaintiff-appellee.
Richard T. Regan, Philippi P. St. Pee', Francipane, Regan & St. Pee', Metairie, for *1109 Payne & Keller of La., Inc. and Md. Cas. Co. defendants-appellants.
Avery T. Waterman, Jr., William F. Bologna, McGlinchey, Stafford, Mintz, Cellini & Lang, PLC, New Orleans, for American Cyanamid Co. intervenor-appellee.
Before KLIEBERT, BOWES and GAUDIN, JJ.
KLIEBERT, Judge.
This case arises from an accident at the American Cyanamid facility in Jefferson Parish. A supervisor in training in the melamine plant was severely burned over 85% of his body when a pump which was being dismantled suddenly discharged hot liquid. From a judgment in favor of the plaintiff and against a maintenance subcontractor and its insurer, the defendants appeal.
The accident occurred on August 24, 1977. On August 23, 1978, the plaintiff, Richard B. Landaiche, an employee of American Cyanamid Company (Cyanamid), filed suit against numerous defendants, including the subcontractor, Payne & Keller of Louisiana, Inc. (Payne & Keller) and its insurer, Maryland Casualty Company (Maryland Casualty).[1] Cyanamid intervened in the suit for reimbursement of benefits paid to Landaiche under workers' compensation. Judgment was rendered on March 18, 1983, and an amending judgment was rendered on April 27, 1983. In the amending reasons for judgment the judge stated that the cause in fact of the accident was the negligence of Payne & Keller employees, Ted Martinez and Norris Buckhannon, and of Cyanamid employee, Joseph McKechnie. He found that Landaiche was free of contributory negligence. The amending judgment in favor of the plaintiff, Landaiche, and against the defendants, Payne & Keller and Maryland Casualty, awarded him $881,530.15 plus legal interest from date of judicial demand and costs. Also it held in favor of the intervenor, Cyanamid, and against Payne & Keller and Maryland Casualty in solido in the amount of $101,321.42 in reimbursement for workers' compensation benefits and medical expenses paid prior to trial. It further cast Payne & Keller and Maryland Casualty for all Cyanamid's post-trial compensation and medical payments and future obligations, and granted the intervenor a credit of the full amount of the judgment awarded to the plaintiff against its obligations.
All other defendants were dismissed prior to or during trial. Payne & Keller and Maryland Casualty have perfected this appeal, and Landaiche has answered the appeal.
Payne & Keller had entered into a contract with Cyanamid to provide maintenance services at the Westwego plant in April, 1975. The contract was amended from time to time as to hours and pay but was still in effect on the day of the accident. Two Payne & Keller millwrights, Ted Martinez and Norris Buckhannon, had been assigned by their employer to remove a recycle pump from a tank in the melamine plant at the request of Cyanamid. The tank contained melamine crystals in a water solution, a "slurry," at a temperature of about 230 degrees F. The pump had been installed several years after the plant was built, its purpose being to provide additional circulation and stop blockage or plugging in the tank and valves. The pump had reduced but not eliminated the problem of plugging.
Landaiche, twenty-seven years old when he was injured, is a high school graduate and was hired by Cyanamid as an hourly employee in May, 1976 but was shortly promoted to a panelboard operator in the urea plant. In May, 1977 he was offered an opportunity to train as a shift supervisor and to learn the melamine operation. During the next several months he continued to work in his previous position but was ordered to spend any available time observing in the melamine plant. On August *1110 1, 1977, just three weeks before the accident, he signed a contract as a salaried supervisor in training and was assigned full time to the melamine unit.
On the day of the accident Martinez and Buckhannon had begun disassembling the pump, having been given a safety work permit signed by the Cyanamid shift supervisor. A Cyanamid operations crew on the previous shift had prepared the pump for maintenance by isolating the suction and discharge lines of the pump, opening the low point drain and locking the pump breaker so that the motor would not start. When the Payne & Keller men arrived at the pump, the valves had been closed and tagged, "Do not open." As Landaiche walked into the area one of the mechanics called him over and asked him to check whether the tagged valves were truly closed. This he did, told the men to proceed with what they were doing, and stood nearby to watch the procedure. The mechanics had followed their usual procedure of gradually loosening the bolts holding the pump housing, but when the next to last bolt was loosened the pump opened, releasing a wall of hot liquid onto Landaiche. The two mechanics received minor injuries.
Landaiche received severe burns over his entire body with the exception of his face, head, hands, and feet and minute areas scattered over his body. During his hospitalization, from August 24, 1977 through October 22, 1977, he was in danger of death until early October. He experienced many complications, including respiratory distress requiring an endotracheal tube, a tracheotomy and a respirator, heart, kidney, and gastrointestinal problems. Part of the burn treatment entailed daily debridement, scrubbing off the top layer of skin prior to application of ointment. That procedure was so excruciatingly painful that Landaiche had to be restrained.
The accident has left Landaiche with hypertrophied and keloid scars (a thick, "elephant-like skin") over 45% of his body with 85/90% loss of skin function, with destroyed sebaceous glands rendering him extremely sensitive to heat, and with limited mobility (34%) of the knees, hips & shoulders. He must wear Jobst pressurized body suits during the day which further limit his mobility, crease uncomfortably when he sits, and retain any perspiration from the scattered unscarred areas of his body. He has been rendered infertile. He is repelled by the sight of his own body and wears long sleeves and long trousers at all times. The burns may become more pliable in time but cannot be corrected cosmetically. He suffers severe depression. The physical and emotional residuals have had a detrimental effect on his relationship with his wife and daughter, and on his recreational activities and employment. He previously preferred outdoor physical work and activities which are now intolerable in warm weather. Landaiche returned to the Cyanamid plant in February, 1978 in an indoors position created for him. However, he was unable to adjust to the work available and resigned in August, 1981. He has not been steadily employed since that date.
The issues raised by Payne & Keller are factual: whether the cause of the accident was the negligence of Payne & Keller's employees or that of Cyanamid's employees, and whether the plaintiff, Landaiche, was contributorily negligent. Landaiche asks us to consider whether the award to him is adequate.

Causation
In considering causation we first look to background facts regarding the melamine operation that were established at trial. Plugging or stoppage in the pipes in the melamine operation was common knowledge to both the Payne & Keller employees and the Cyanamid employees. While the plaintiff was newer to that area than the men dismantling the pump and less familiar with the operation, he acknowledged being aware of the problem.
Safety was the responsibility of both companies. The contract governing Payne & Keller's maintenance provided that it was responsible for the conduct of the work and for compliance with safety practices of the Associated General Contractors *1111 of America, Inc. and with Cyanamid's safety rules.[2] Cyanamid checked for safety before allowing maintenance work to proceed. Payne & Keller was required by its contract to take all necessary precautions not to endanger Cyanamid's employees and members of the general public. The Payne & Keller supervisor at the Cyanamid plant testified that their employees had copies of safety rules and were aware of hazardous chemicals and extreme temperatures and pressures.
The work request for maintenance originated with Cyanamid's production foreman and outlined the type of work required. The Payne & Keller foreman then selected the workers and prepared a safety work permit, checking off safety equipment required. The mechanics then took the permit to the Cyanamid shift supervisor who reviewed the permit and inspected the job site to determine if the proper safety equipment was provided and if the equipment to be repaired was properly isolated. (In this instance Cyanamid operations personnel had set up the job by isolating the pump.) The Cyanamid supervisor then signed the permit if he found that the equipment was ready and it was safe for the maintenance crew to proceed. As noted above, both Cyanamid and Payne & Keller employees were required to observe safety rules. The Payne & Keller men both testified that if they had any questions or concern regarding safety they were to stop work and consult a Cyanamid supervisor or a Payne & Keller foreman.
The trial judge in his reasons for judgment stated that Joseph McKechnie of Cyanamid was negligent in signing the safety work permit and allowing maintenance to proceed when he felt there was a 20% chance there was a plug in the line. He found that Norris Buckhannon and Ted Martinez of Payne & Keller were negligent in failing to tell Landaiche that they felt something was amiss with the pump.
Negligence of American Cyanamid Employee, Joseph McKechnie. Cyanamid does not dispute the trial court's finding in this regard. McKechnie testified that Martinez and Buckhannon went with him to the pump. He said he was concerned when he found no drainage from the line at the bottom of the tank. He checked by running a rod into the small drain valve in the line and by measuring the rod across the width of the line determined that the drain was not plugged. He was still concerned, called the lack of drainage to the mechanics' attention and told them to be "extra careful," to work slowly, and come to him if they felt they could not work safely. He acknowledged, "I felt it might not have been completely safe despite the fact I did sign the safety permit." He did not suspect that a large amount of hot liquid was trapped and did not mention plugging to the mechanics. He felt that, "... they were supposed to be aware, based on their observing me, to go through these procedures to decide if there were any safety problems." The mechanics did not report back to him.
We note also that Cyanamid admits that the company failed to install the flush valves in the recycle system that were specified in the original plan. At the time of the accident there was no mechanism for flushing the system other than opening the drain valve at its bottom, and therefore no way to be sure there was no plugging prior to dismantling the pump.
Negligence of Payne & Keller Employees, Ted Martinez and Norris Buckhannon. The testimony at trial indicated that Martinez had worked at the Cyanamid plant for Payne & Keller about two years prior to the accident, mostly in the melamine plant and had worked on similar pump systems about six times; Buckhannon *1112 had also worked at Cyanamid about two years, albeit mostly in the urea plant, but had worked on the pump that caused the accident twice before. The men performed the dismantling by the usual procedure.
The question before us is whether certain observations they had made were suggestive of a problem and they failed to take the proper steps. Martinez and Buckhannon deny having been told by McKechnie to be "extra careful," although they admitted being aware of the lack of sufficient drainage to clear the line.
Barry Blalock, the maintenance supervisor of Payne & Keller employees at Cyanamid, had interviewed Martinez and Buckhannon in the hospital after the accident. He testified that the men said they suspected something was wrong with the pump. One or the other said that the bolts were hot and extra tight and both said the pump housing was hot. Buckhannon denied having felt any concern. Martinez and Buckhannon both denied telling Blalock about the bolts, but admitted telling him about the hot housing. Buckhannon noted some dripping or seepage from the pump itself but did not report it to Martinez. Martinez said if he had known of the seepage he would have stopped work on the pump. In summary, from the testimony of the mechanics, they were aware of plugging problems, had previous experience working on pumps, had been warned to be careful, saw that there was little drainage from the line, found the pump housing was hotter than usual, and one of them was aware of dripping from the pump bowl at the flange bolt.
Martinez testified that he told Landaiche the pump was hotter than usual and asked him to see if it was safe to work on, but did not mention possible plugging. Buckhannon said that although he was not concerned, he spotted Landaiche and asked him to check the valves.
According to Landaiche's testimony, the only information given to him was of the dripping and that the mechanics wanted him to recheck the tagged valves. They did not express any alarm. He felt the slight drip was simply a little residual liquid in the bowl, which was lower than the drain valve. He inquired whether they had gotten drainage earlier and was told they had. Finding that the valves were indeed closed, he told them to proceed. He said that, although the observations singly might have had no significance to him, if he had been completely informed he would have called someone who was familiar with the pump's operation.
We agree with the court's finding of negligence on the part of the Payne & Keller employees. They had knowledge of facts which showed there was a dangerous problem and did not communicate this to Landaiche or to others who had the authority to correct it.
The Payne & Keller men knew that they could stop work at any point where they felt there was a safety problem. They were then supposed to seek out a supervisor or the Payne & Keller foreman. Instead, they happened to see Landaiche in the area and called him over. Payne & Keller argues that its men had no reason to believe that Landaiche did not have a supervisor's authority. There is conflicting testimony as to the mechanics' awareness of Landaiche's limited authority; however, Martinez testified that he did not realize Landaiche was in training and Buckhannon admitted he had only seen him occasionally in the melamine unit in the last few months but remembered him from the urea plant. Both men said they assumed he had the knowledge to check out the pump. Peter Martinez, a shift supervisor for Cyanamid, testified that there were six or eight Cyanamid operations men and twenty Payne & Keller maintenance men plus supervisors in the melamine plant. They all knew each other and saw each other daily.
Contributory Negligence. Payne & Keller argues that Landaiche acted unreasonably in ignoring the mechanics' concerns and in not investigating more thoroughly, e.g. feeling the pump lines, and in telling the men to go ahead rather than *1113 calling someone higher up. Cyanamid's position is that Landaiche was not told of their concerns and did only what they asked him to do. They asked him to check the closing of the valves, which was in the scope of Landaiche's competence and authority as a trainee, according to Cyanamid supervisor, Peter Martinez. We agree.
We find that the record supports the trial court's evaluation of the testimony and the credibility of witnesses and the conclusions made. Canter v. Koehring, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Accordingly, there is no reason for this court to disturb the findings of fact in respect to the negligence of Payne & Keller employees, Ted Martinez and Norris Buckhannon, and of Cyanamid employee, Joseph McKechnie, and in respect to the lack of contributory negligence on the part of the plaintiff, Richard Landaiche.

Damages
We first consider the amount of the award to the plaintiff and the award of reimbursement to the employer.
The amending judgment, signed on April 27, 1983 provided for judgment in favor of the plaintiff, Richard B. Landaiche, against the defendants Payne & Keller of Louisiana, Inc., and Maryland Casualty Company, in solido, for $881,530.15 plus legal interest from date of judicial demand and costs.
In his amending reasons for judgment, the trial judge itemized the award to the plaintiff as follows:

Past and future mental and
 physical injuries, permanent
 scarring, and disfigurement $500,000.00
Lost wages, past & future 353,981.99
Future medical expenses 27,548.16
 ___________
 $881,530.15
The award to the intervenor includes:
Past medical expenses $ 90,057.13
Worker's compensation wages 11,264.29
 ___________
 $101,321.42

The plaintiff in answering the appeal prays for a substantial increase in the amount of the award. Payne & Keller argues that, in the event this court upholds the judgment as to liability, the amount of the award of general damages and of special damages for lost wages should be substantially reduced. American Cyanamid suggests raising both general and special damages.

General Damages
Landaiche's pain and suffering at the time of the accident and during recovery is well documented. The testimony of Dr. John M. Finley, a plastic surgeon, indicated that Landaiche's scarring is permanent and cannot be corrected by plastic surgery. The defendant notes that Landaiche has no disfiguring of his head, hands, and feet and has minimal limitation of motion. However, the inability of his skin to protect him from heat, the necessity of wearing a body suit, the emotional problems resulting from the accident, his infertility, and the overall restrictive effect upon most aspects of this young man's life more than offset the few mitigating factors and would make a reduction unthinkable. After considering the magnitude of this plaintiff's injuries, we find that the portion of the award allotted to past and future pain and suffering, both mental and physical, permanent scarring, and disfigurement is inadequate and is an abuse of the discretion accorded the trier of fact in LSA-C.C. art. 1934(3). Accordingly we raise the award to $850,000.
In raising the amount we are mindful of the guidelines set down in Coco v. Winston Industries, 341 So.2d 332 (La.1976) and believe that this figure represents the lowest point which is reasonably within the discretion of the court. We have been referred to and note for information the awards made in the few recent Louisiana cases with somewhat similar injuries. In Mobley v. Rego Co., 412 So.2d 1143 (La. App. 2nd Cir.1982), writs denied 414 So.2d 774 and 414 So.2d 1251 (La.1982), where the plaintiff was burned over 55 to 60% of his body and was severely incapacitated, the court awarded $500,000 for pain and suffering and $625,889 for lost earnings and earning capacity. In McKowen v. Gulf *1114 States Utilities Co., 358 So.2d 675 (La.App. 1st Cir.1978), where the plaintiff received severe electrical burns and damage to his heart but had since entered college and was able to lead a fairly normal life, the court award was $650,000, mostly for pain and suffering and only partly for loss of future earning capacity; in addition the plaintiff received $350,000 in settlement with a released defendant.

Loss of Earnings
The trial judge in our case calculated the award for past and future loss of earnings on the basis of the testimony of Dr. Seymore S. Goodman, an economist. Based on Landaiche's salary of $27,500, applying an inflation factor of 9.45% and a discount factor of 8.75%, Dr. Goodman calculated that Landaiche's lost earnings from the date of his resignation to date of trial amounted to $29,606.85, while future earnings over his work life expectancy of 27.3 years from date of trial were $833,763.87, a total of $863,370.72. At the request of counsel for Payne & Keller and the court, Dr. Goodman made an approximation of lost wages after deduction of income taxes, reducing the figure to $24,277.62 for past lost wages and $683,686.37 for future lost wages, totalling $707,963.99. The court then awarded one-half that figure, $353,981.99, because:
"... plaintiff is capable of employment and has worked since the accident and prior to the trial, although, for injury related reasons, he has not enjoyed the type of employment and has been unable to maintain consistent employment..."
The plaintiff contends the court was unjustified in basing his award on net, rather than gross, lost income, and that the weight of the jurisprudence favors gross income as the proper basis for computing wage loss. The Supreme Court has not ruled specifically upon this issue but in Cheatham v. City of New Orleans, 378 So.2d 369 (La.1979), it reinstated the trial court's award, which had been based upon gross income figures. The court in Morgan v. Liberty Mutual Insurance Company, 323 So.2d 855 (La.App. 4th Cir.1975) stated, at 862:
"Because tax liability varies with the individual and is altered with changing circumstances, in some cases it is more appropriate to project future lost earnings on a figure near the gross income...."
Gross income was considered the appropriate figure by our brothers in this circuit in Holmes v. Texaco, Inc., 422 So.2d 1302 (La.App. 5th Cir.1982) and also in the recent cases of Green v. Farmers Ins. Co., 412 So.2d 1136 (La.App. 2nd Cir.1982); Lute v. City of Lake Charles, 394 So.2d 736 (La.App. 3rd Cir.1981); Hunter v. Office of Health Services, Etc., 385 So.2d 928 (La.App. 2nd Cir.1980); and Roundtree v. Technical Welding & Fabrication Co., 364 So.2d 1325 (La.App. 4th Cir.1978). The court in Roundtree rejected the use of net income figures because of the difficulty in projecting the tax rate 29.2 years into the future.
We agree with the jurisprudence cited above and hold that the trial judge in the case before us was incorrect in basing his award on estimated net figures. Dr. Goodman testified that he would require a computer to calculate income tax factors with any degree of precision, as earnings would presumably increase each year. However, he made an in-court calculation using an estimated 18% reduction for taxes and reduced his gross wages before taxes of $833,763.87 to $683,686.37 after taxes (corrected by the trial judge to $696,699.70). Hence, in our computation, we will use the gross wages before taxes of $833,763.87 in computing the award for the plaintiff's impaired earning capacity.
The plaintiff returned to work after his recuperation period, and in fact Cyanamid created an inside position for him and provided some computer training. However, according to the testimony of the plaintiff and of his treating psychologist, Dr. Richard Wakeman, he felt unable to handle the desk job from the standpoint of aptitude and interest, and became depressed. However, he would have gladly *1115 returned to his earlier position at the control board in the urea plant, had it remained an indoor job. After resigning his Cyanamid employment in August, 1981, he worked a few days a week for his father doing inside carpentry as needed. Looking realistically at Landaiche's situation, we find that the physical limitations along with the emotional problems are such that his chances of competing in the labor market to find and maintain employment that is suited to his needs, education and aptitude will be limited. Nevertheless, we believe he is and will continue to have some residual earning capacity. Although on the high side, we cannot say the trial judge's finding that plaintiff retains fifty per cent of his former earning capacity is error. Accordingly, we amend the judgment to award one-half of the amount of past and future lost wages, using the gross income figure provided by Dr. Goodman, of $863,370.72 or to $431,685.37 in lieu of $353,981.99 as was awarded by the trial court.

Future Medical Expenses
The trial judge stated that, "The only cost which is calculable to the degree of legal certainty required is the cost of the Jobst body suits worn by the plaintiff." The plaintiff's physician said he would be using the suits at the rate of two every three months indefinitely. The court estimated that Landaiche would need the suits for half of his life expectancy of 20.35 years and awarded one-half the total cost at the current price of $168.80, amounting to an allotment of $27,548.16.
We agree with the court's award as to the body suits but disagree with the omission of an allowance for other future medical expenses. The treating psychologist, Dr. Richard Wakeman, testified that he expected Landaiche to continue to be anxious, sensitive and prone to depressive episodes for which he will need therapy and possibly hospitalization from time to time. The cost of care in the stress unit where Landaiche was previously treated was $2,000 to $2,500 per week at time of trial. Landaiche also has been treated surgically for infections resulting from trapped hair follicles in the groin. His treating physician, Dr. Joseph F. Mabey, a burn expert, testified this complication is to be expected from the burned skin. Where the need for future medical care has been demonstrated but the cost is not susceptible of determination, the court may make a reasonable award. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (La. 1971). Past medical expenses totalled more than $90,000. We consider $30,000 to be a reasonable allowance for medical expenses other than the body suits. Accordingly, we increase the trial court's award for future expenses to $57,546.16.

Intervention
We now consider the awards to the intervenor, American Cyanamid Company, which read as follows:
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that there be judgment herein in favor of intervenor, American Cyanamid Company, and against defendants, Payne & Keller of Louisiana, Inc. and Maryland Casualty Company, in solido, in the amount of One Hundred One Thousand, Three Hundred Twenty-One & 42/100 ($101,321.42) Dollars, reimbursement of Worker's Compensation benefits, medical expenses and obligations paid by intervenor prior to trial, plus legal interest thereon from date of judicial demand until paid, and for all costs of these proceedings; and that any award to intervenor shall be paid to intervenor first and in preference and priority to the award to plaintiff;
"IT IS ORDERED, ADJUDGED AND DECREED, that there be judgment in favor of intervenor, American Cyanamid Company, and against the defendants, Payne & Keller of Louisiana, Inc. and Maryland Casualty Company, in solido, for all future worker's compensation benefits, medical expenses and other obligations which intervenor has paid or may become obligated to pay to or on behalf of plaintiff subsequent to the trial, and with respect to this judgment, that intervenor, *1116 American Cyanamid Company, is hereby granted a credit against its obligations to plaintiff for the full amount of the Judgment hereinabove awarded to plaintiff."
As noted above, the award to the plaintiff of $881,530.15 represented the allotments for general damages, past and future lost wages, and future medical expenses. The parties had stipulated to the amount paid by Cyanamid's insurer in compensation, $90,057.13 in medical payments and $11,264.29 in wages. The award to the plaintiff did not allow for pretrial medical expenses. Instead, the trial judge simply awarded $101,321.42, the total stipulated amount, directly to the intervenor. The court explained its award to Cyanamid as follows, in the amending reasons for judgment:
"... Said expenses and wages were paid by plaintiff's employer, American Cyanamid Company, who intervened and was subrogated to plaintiff's rights in the total amount of $101,321.42. The Court concludes that Payne & Keller of Louisiana, Inc. and Maryland Casualty Company, in solido, are liable to American Cyanamid Company in the sum of $101,321.42, payable in preference and priority, and for all future workmen's compensation benefits, medical expenses and other obligations which intervenor has paid, or may become obligated to pay, to or on behalf of plaintiff subsequent to the trial."
There is some confusion as to what the final award was and that implementation of the amending judgment as written would result in deduction of prior medical payments and wage payments from the award to the plaintiff. As we interpret the amending judgment, there are two separate awards. The $101,321.42 was not intended to be included in the judgment for the plaintiff but was a direct award for reimbursement for this sum to the intervenor. However reference to the trial judge's reasons and the computations and evidence upon which the award is based show that the $90,057.13 in medical payments was an additional direct award, but that the $11,264.29 was also included in the award to plaintiff for lost wages. Thus, as written, the judgment requires Payne & Keller to pay for pretrial lost wages twice. We shall amend to provide for both amounts to be awarded to plaintiff with apportionment to intervenor.
The award to Cyanamid for reimbursement of post trial benefits which the employer has paid or will pay subject to a credit of the amount of the award to the plaintiff, is also contested. Cyanamid argues that Payne & Keller is liable to it under the statute for reimbursement of all future compensation benefits above the amount of the plaintiff's award. Its position is clearly contrary to the statute, LSA-R.S. 23:1103, and the jurisprudence. The employer or compensation carrier is entitled to a credit for future compensation, computed at 6% per annum, up to the amount of the tort judgment, and is not liable for payment until that amount is used up.[3] Once the judgment is exhausted the employer or carrier is obligated to pay any further benefits that come due. Billeaud v. United States Fidelity & Guar. Co., 349 So.2d 1379 (La.App. 3rd Cir.1977); Lachney v. Motor Parts & Bearing Supply, Inc., 357 So.2d 1277 (La.App. 3rd Cir. 1978). See also W. Malone A. Johnson, Workers' Compensation Law and Practice, Section 370 in Louisiana Civil Law Treatise, 188 (2d Ed.1980); McElroy v. Vest, 407 So.2d 25 (La.App. 3rd Cir.1981), writ denied 412 So.2d 83 (La.1982).
Finally we shall amend the judgment rendered so as to limit the reimbursement for medical expenses to the amount awarded plaintiff for medical expenses only. Fontenot v. Hanover Ins. Co., 385 *1117 So.2d 238 (La.1980). The jurisprudence and statute are silent as to whether future medical obligations are credited only against that portion of the plaintiff's award allotted to future medical expenses. In Fontenot, supra, no future medical expenses were under consideration. The court explained why reimbursement of past medical expenses may not be deducted from the plaintiff's pain and suffering award, when there is no award to him for medicals, at 385 So.2d 238, 239:
"... The underlying policy of the workers's compensation statute provisions for apportionment of damages between employer and employee in suits against third persons merely prevents an employee's double recovery for his injuries; it does not require an employee to reimburse out of his award for pain and suffering medical expenses which he failed to recover from a third party tort-feasor."
The same reasoning should apply to future medical expenses and we hold that future medical expenses are to be credited only against the allowance for future medical expenses. Accordingly, we shall amend the judgment appealed from to provide reimbursement to the intervenor for all medical expense payments only out of the corresponding medical award to plaintiff.
For the reasons stated above, we amend the judgment appealed from and substitute the following for the first three paragraphs:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, Richard B. Landaiche, and against the defendants, Payne & Keller of Louisiana, Inc. and Maryland Casualty Company, in solido, in the amount as follows:

Past and future mental and
 physical injuries, permanent
 scarring, disfigurement, pain
 and suffering $850,000.00
Past lost wages 29,606.85
Future lost wages 431,685.37
Past medical expenses 90,057.13
Future medical expenses 57,546.16
 _____________
Total amount $1,458,895.51

together with legal interest thereon from date of judicial demand until paid, and for all costs of these proceedings, subject to the apportionment to his employer under L.R.S. 23:1103.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of intervenor, American Cyanamid Company, and against defendant, Payne & Keller of Louisiana, Inc. and Maryland Casualty Company, in solido, in the sum of $101,321.42 representing the medical expenses of $90,057.13 and the worker's compensation benefits of $11,264.29 actually paid to the date of trial, together with legal interest thereon from date of judicial demand until paid. Additionally, there is judgment in the full sum of the amount American Cyanamid Company has actually paid and/or will actually pay prior to the date of the payment of the judgment herein to plaintiff Richard B. Landaiche as worker's compensation benefits and/or medical expenses, plus legal interest on the amount of each payment from date of that payment until date of payment of the judgment herein. These sums so awarded are apportioned in this judgment to American Cyanamid Company to be paid with precedence out of the awards to plaintiff Landaiche, but limiting the awards for medical benefits to be paid only out of corresponding award to plaintiff for medical expenses. Defendants shall pay all costs of the intervention.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that such portion of the amount of the judgment herein in favor of Richard B. Landaiche which exceeds the amount which American Cyanamid Company is entitled to be paid under the apportionment is assessed in favor of Richard B. Landaiche and upon payment thereof to him, in accordance with R.S. 23:1103, the liability of American Cyanamid Company for future worker's compensation benefits shall cease for such part of the compensation benefits due, computed at 6% per annum, and shall be satisfied by such payment.
*1118 All other parts of the judgment are affirmed. All costs are assessed against appellants.
AMENDED AND AFFIRMED.
NOTES
[1] This case was consolidated for trial with that of Norris E. Buckhannon vs. K.T.M. Industries, et al., 24th J.D.C., Parish of Jefferson, number 216609. All claims in that suit were dismissed and the case is not before this court.
[2] A joint stipulation was entered into after trial by the parties concerning evidentiary documents, including amendments to the contract, which had been lost. As to some documents, copies were placed in evidence; as to others, the parties stipulated as to the effect and meanings of them. As the clerk of the district court has located missing documents, we feel compelled to use the originals to decide this matter without regard to the stipulation that is no longer applicable.
[3] R.S. 23:1103 states, in pertinent part: "... but if the damages are more than sufficient to so reimburse the employer, the excess shall be assessed in favor of the injured employee or his dependent, and upon payment thereof to the employee or his dependent, the liability of the employer for compensation shall cease for such part of the compensation due, computed at six per cent per annum, and shall be satisfied by such payment."