KLIEBERT, Judge.
This is a suspensive appeal by defendant Schwegmann Brothers Giant Supermarkets, Inc. from a judgment awarding plaintiff Ms. Marilyn Hull $20,459.00 in damages for injuries sustained in a slip and fall on defendant’s premises. The plaintiff answered the appeal and argues for an in *1070 crease in the award. We amend by reducing the amount of the award to $6,659.00 and as amended, affirmed.
Plaintiff entered Schwegmann’s premises at 8001 Airline Highway, Metairie, La., on the evening of December 17, 1979 and commenced shopping by walking down an aisle which had frozen food on one side and automotive supplies on the other. At about 7:25 P.M., while attempting to lift a container of anti-freeze from the top shelf, the plaintiff contends she slipped on a liquid and fell to the floor causing injury to her back.
The case was tried on three separate days; i.e., November 21, 1983, May 10, 1984 and September 27, 1984. Fourteen and one-half months elapsed between the introduction of evidence as to liability and the rendition of judgment. The trial judge found the plaintiff had slipped and fallen to the floor while shopping in defendant’s store and that the cause of the fall was a liquid substance, having the appearance of water, lying on the floor at the point of the fall. Accordingly, he rendered judgment in favor of plaintiff and against the defendant. In reaching the total award of $20,-459.00 the court concluded the plaintiff had sustained a soft tissue injury which resulted in pain and suffered for approximately 18 months and was incapable of working for five months. For this, he awarded $18,-000.00 in general damages, $2,000.00 in lost wages and $459.00 for medical expenses.
The defendant-appellant assigned as trial court error: (1) the imposition of liability on defendant under the facts shown, (2) awarding $18,000.00 in general damages, (3) refusing to permit the introduction of testimony by Tyronne Lafauci, an investigator, and (4) failing to reject all of plaintiffs testimony under the Doctrine of Fal-sus In Uno, Falsus in Omnibus. We consider the argument in support of the assigned errors under the caption of liability or quantum.
LIABILITY
In a slip and fall case the operator of the store may be liable to a tort victim for the negligence of his employees or of his customers in creating a hazard which causes the victim to fall and sustain injury. Prior to the state supreme court rulings in Kavlich v. Kramer, 315 So.2d 282 (La.1975) and Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (La.1976) the injured victim could recover from the store operator only by proving the store operator or his employee caused the hazard and failed to take reasonable steps to remove the hazard. Since the Kavlich case, however, once the victim proves the hazard caused him to fall and he has sustained the injury, just as in a res ipsa loquitur case, the employer bears the burden of going forward with evidence to exculpate itself from the presumption it was negligent. Thus, once the plaintiff meets his burden of proof, to exculpate himself from negligence the store operator has to show (1) the hazard was not caused by one of his employees and (2) he exercised such a degree of care that he would have known under most circumstances of a hazard caused by customers. Brown v. Winn-Dixie Louisiana, Inc., 452 So.2d 685 (La.1984); Rose v. Winn-Dixie Louisiana, Inc., 474 So.2d 26 (4th Cir. La.App.1985).
The plaintiff testified that there was a substance on the floor occupying an area about one foot in diameter which caused her to slip and fall to the floor on her back when she reached to the top shelf to catch a container of anti-freeze. Although no eye witness testimony was submitted, the plaintiff testified that a “stock boy” was standing near her when she fell but left after the fall without rendering assistance. Also, the defendant’s employees, Williams and Webber, testified that when they arrived at the scene of the fall there was a substance on the floor occupying an area about six inches in diameter. Both Williams and Webber testified that the substance had the appearance of water. Also, Williams testified the substance had foot prints in it, indicating people had stepped in the “puddle”.
According to Williams, when he arrived at the scene he checked both sides of the *1071 aisle to see if the substance on the floor dripped or was dropped from one side (where frozen food was maintained) or the other side (where the anti-freeze was located) and found that it had not come from either side. Although he had, pursuant to his duties, checked the area several times during the day, he had not seen the substance on the floor before the plaintiff fell.
Through its employees, Williams, Web-ber and Mendez, the defendant showed that the store was cleaned each night, and during business hours there is a porter or porterette assigned to keeping specified areas free of spills, boxes or trash. The porter is required to maintain a log of the times he inspects, sweeps or mops the particular aisles in his area. Here, Webber, who was the porter assigned to the area where plaintiff fell, said he had inspected the aisle where plaintiff fell at 7:14 P.M. (the accident happened at 7:25 P.M.) on the same day plaintiff fell and found no hazard. His log supported his testimony.
On cross-examination all three employees testified they had heard of or knew of instances where the porters or porterettes had falsified the log, but all insisted the log in this instance was correct and Webber always performed his work and would not falsify records. The porter denied he had merely checked the aisles by stopping at the end and looking down the aisles.
The defendant contends the testimony of its witnesses should be accepted, but plaintiff’s testimony disregarded in its entirety because of the proven false testimony given as to her employment record and the extent of her disability (further elaborated on under quantum). Further, even if the maximum is not applied, defendant contends the trial judge erred in concluding the defendant was liable.
The maximum Falsus in Uno, Falsus in Omnibus is a harsh and unrealistic rule and should be applied only with extreme caution. Further, the giving of false testimony does not require that the testimony of the witness be disregarded in its entirety. Brown v. State Mutual Life Ins. Co. of America, 377 So.2d 355 (3rd Cir. La.App.1979). Although there was no eye witness to the fall, in our view the trial judge did not abuse his discretion in accepting plaintiffs testimony as to her fall. Although we cannot condone her falsifying information supplied on employment applications, considering her financial situation and need, we can understand her desire to falsify her formal education and employment in the hopes of increasing her chances of employment. Further, since defendant’s witnesses corroborated plaintiff’s testimony of there being a water-appearing liquid on the floor at the point of plaintiff’s fall, we cannot say the trial judge erred in finding the plaintiff slipped in a liquid lying on defendant’s floor. Once this was proven, the burden shifted to defendant to show his employees had not caused the liquid to be on the floor or that the puddle was caused by a customer and defendant had exercised sufficient care to discover and remove the hazard to absolve itself of liability. Although there is a conflict as to how the liquid got on the floor, we cannot say the trial judge erred in finding the defendant had not met the burden of proof necessary to absolve itself of negligence. Nor can we say the trial judge erred in refusing to admit the testimony of defendant’s investigator, Mr. Lafauci, and in requiring him to submit the witness’ report as a proffer. The court did permit Mr. Becker to testify and he indicated Lafauci’s surveillance was performed in March 1983. It is apparent from the record the trial judge had already concluded the plaintiff had exaggerated the length of time she sustained pain; hence, cumulative evidence as to surveillance in the exaggerated time period would serve no useful purpose. Accordingly, we affirm the finding of liability as to the defendant.
QUANTUM
On the day following the fall plaintiff saw Dr. Leroy W. Stagni, a chiropractor, for treatment. He saw and treated her on eight occasions between December 19, 1979 and January 7, 1980. Although he saw her again on January 30, 1980 and April 4, 1980, at those times he considered her com *1072 plaints of pain to be intermittent rather than constant or acute.
In Dr. Stagni’s views, plaintiff sustained sprains of her neck and lower back and an irritation of the right sciatic nerve. The chiropractic treatments consisted of diathermy and spinal manipulation. He restricted her to bed rest for a week and by January 7, 1980 considered her condition sufficiently improved for her to return to work. He did not prescribe medicine but did recommend she take Vitamin C.
Ms. Hull testified that she was in almost constant pain from the date of the fall to the last day of trial and that the injury and pain resulted in a severe restriction on her earning capacity. She submitted into evidence copies of Charity Hospital Emergency Room records showing she went to the . emergency room on January 7, 1980 complaining of back pain and a tingling sensation up and down her spine. She was advised to remain in bed for three weeks and an appointment was made for her at the orthopedic clinic for January 28, 1980. The record does not indicate whether she maintained the appointment.
Plaintiff did not see a chiropractic or a medical doctor from the date of her last visit to Dr. Stagni on April 4,1980 until she saw Dr. Bert R. Bratton, a neurologist, on May 4, 1981. Dr. Bratton’s report, by letter, to the attorney then representing the plaintiff was stipulated into evidence by the parties. Although his examination showed a slight tenderness in the cervical area, he found no paraspinous muscle spasm or any objective evidence of any significant injury. He recommended x-rays of the spine and future examination. From the record it does not appear any were forthcoming.
On July lñ, 1981, plaintiff was seen by Dr. John F. Schuhmacher. Like Dr. Brat-ton he found no objective findings of injury but recommended a myelogram because she had had two years of complaints of pain without a firm diagnosis.
Dr. George C. Battalora examined the plaintiff on March 12, 1982. He found no muscle spasm or other objective symptoms of injury. In his view, she had scoliosis or a “postural backache” due to a “swayback”.
Plaintiff was involved in an automobile accident in October 1982. When she first visited Dr. Ray J. Haddad, an orthopedic surgeon, for a fracture of the hand sustained in the auto accident, she made no complaints as to her back. Only after her attorney wrote a letter requesting an evaluation did she inform the doctor about her complaints of pain in the back. He examined her on April 15, 1983 and found mild tenderness but no spasm. He concluded she did not have any nerve root irritation and the pain in her back at the time of his examination was probably trochanteric bursitis.
The plaintiff was very vague about her work history at the times immediately preceding and subsequent to the accident. However, defendants made a strong effort to determine her work history and filed in evidence several of plaintiff’s employment applications and/or the employers’ files during her work period. Prior to the accident, she worked for the Hyatt Regency from November 13, 1974 through November 24, 1979. From January 15, 1979 to February 15, 1979 she worked for First Lady Spa, 16 hours per week earning $2.90 per hour.
In his reasons for judgment the trial court concluded the plaintiff sustained a soft tissue injury to her lower back. Although he stated that it was difficult to pinpoint when she recovered from the injury because she failed to seek medical treatment for more than a year after her discharge by Dr. Stagni, he estimated her period of pain and suffering at eighteen months and lost time from work at five months, and based on these estimates awarded $18,000.00 for general damages and $2,000.00for loss of wages. Although we agree with the trial judge’s finding that the plaintiff sustained a soft tissue injury, we believe he erred in concluding plaintiff was unable to work for five months and/or that she sustained pain for eighteen months following the accident.
*1073 From our review of the record with the possible exception of the plaintiffs vague and indefinite testimony we found no evidence which supports the trial court’s estimate of eighteen months of pain. To the contrary, the plaintiffs mother, who resided with her after the fall, could not or would not say how long plaintiff actually lived with her or how long plaintiff was in pain after the fall.
As to plaintiffs testimony, the trial judge reached the following conclusion:
“Her credibility was severely tested by some of the evidence produced and particularly, the photographs of her shooting pool and entering a vehicle which necessitated her raising one foot to a height of approximately her waist in order to enter said vehicle, severely damage her claim of present inability to function properly because of her back.”
The evidence referred to by the court in the above quotation was obtained by the defendants during May and August 1982 and hence was well after the 18 month cut off date used by the court as the date when the pain terminated. However, the defendants also showed that plaintiff had habitually overstated her educational and employment history prior to and following the fall in 1979. Moreover, the only evidence submitted by the plaintiff which covered the eighteen month period in which plaintiff sustained suffering was that of the chiropractor and of Dr. Battalora. Dr. Stagni considered her able to return to work three weeks after the fall. Although the emergency room report from Charity Hospital might indicate that the doctors there, on January 7, 1980, advised three weeks of bed rest, the plaintiffs actions indicate otherwise for she actually worked at the First Lady Spa for two of the three weeks. Further, Dr. Batalora testified that a “lumbar sprain should be a relatively limited situation, in certainly four to six months it ought to be well on its way to getting better and recovery from it, especially someone in this [plaintiffs] age group.” Note also the plaintiff did not seek treatment for the injury from April 1980 until May 4, 1981.
Considering all of the foregoing we hold the evidence in the record does not support pain from the soft tissue injury beyond six months. Further, in order to recover for loss of wages, the claimant must prove work was available but the claimant was unable to perform it because of the injury and therefore lost the wages. Ferro v. Green, 394 So.2d 824 (4th Cir.La.App.1981).
Although the plaintiff testified that she was unable to work because of the injury, her testimony as to when and where she worked and her earnings from work was extremely vague. Further, although she contended she was unable to work because of the injury, documentary evidence submitted by defendant shows her employment was usually terminated by her employer because of her failure to report to work and that she had informed her employers her failure to report to work was due to lack of transportation.
Once the conclusion has been reached that the trial court erred in fixing the amount of the award, the scope of review is limited to lowering (raising) the award to the highest (lowest) point which, based on the facts of the instant case, was in the discretion of the trial court. Reck v. Stevens, 373 So.2d 498 (La.1979). Prior decisions may serve as an aide in determining what would be a proper award in the instant case. Champagne v. Lee, 470 So.2d 378 (5th Cir.La.App.1985); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
On review of the jurisprudence, we find awards of general damages for injuries similar to the plaintiff’s range from $2,000.00 to $6,200.00. See Tucker v. Howes, 413 So.2d 585 (1st Cir.La.App.1982), where $2,000.00 was awarded for lower back injury; Planellas v. Doty, 418 So.2d 738 (5th Cir.La.App.1982), where $2,000.00 was awarded for severe lumbar sprain; Johnson v. New Orleans Public Service, Inc., 427 So.2d 78 (4th Cir.La.App.1983), where $3,586.00 was awarded for lower back strain; Cabone v. Melba Ice Cream *1074 Co., Inc., 423 So.2d 739 (4th Cir.La.App. 1982), where $6,200.00 was awarded for acute back strain; and Seals v. Morris, 423 So.2d 652 (1st Cir.La.App.1982), where $5,000.00 was awarded for lumbosacral strain.
Therefore, the general damage award set by the trial judge is reduced to $6,200.00, which undér the jurisprudence we believe is the highest amount the trial judge had the discretion to award for the injuries sustained by the plaintiff. We also reverse and set aside the trial judge’s award for lost wages. Consequently, the trial court’s total monetary award to the plaintiff is amended to be $6,659.00 in lieu of $20,459.00 and as amended is affirmed. Each party is to bear his own cost of the appeal.
AMENDED IN PART AND, AS AMENDED, AFFIRMED.