489 So.2d 931 (1986)
Estella B. RILEY
v.
WINN-DIXIE LOUISIANA, INC.
No. 85-CA-744.
Court of Appeal of Louisiana, Fifth Circuit.
May 12, 1986.
Rehearing Denied June 17, 1986.
*932 Richard J. McGinity, Baldwin & Haspel, New Orleans, for plaintiff-appellant.
Dan R. Dorsey, Lawrence F. Chisholm, Dorsey & Chisholm, River Ridge, for defendant-appellee.
Before KLIEBERT, GRISBAUM and DUFRESNE, JJ.
KLIEBERT, Judge.
The plaintiff-appellant, Estella B. Riley, sued Winn-Dixie, the defendant, for personal injuries sustained as a result of a slip and fall in defendant's store. The case was tried before a jury on May 28, 1985. The jury found the plaintiff to be 90% at fault and the defendant to be 10% at fault. It set plaintiff's damages at $30,000.00, thus casting defendant in judgment for $3,000.00.
Following the denial of plaintiff's motion for judgment notwithstanding the verdict *933 or alternatively for a new trial, plaintiff perfected this devolutive appeal on both liability and quantum. The defendant neither appealed nor answered the appeal. We amend in part and, as amended, affirm.
We consider first the question of liability.

LIABILITY
Ms. Riley entered the defendant's store at approximately 8:15 o'clock P.M. on November 27, 1982. It had been raining that day and there is conflicting testimony as to whether or not it was raining at the time she entered the store. As she walked through the doors, she walked on a mat on the floor, and proceeded approximately six to eight feet on smooth tile towards the shopping carts. Before she reached the carts, her feet "came out from under her" causing her to fall on her buttocks.
Ms. Riley is 56 years of age and is a large woman, weighing approximately 250 pounds. She was helped up by two customers in the store. Neither were called as witnesses. After the fall, she was brought to a cashier who called the manager of the store.
According to Ms. Riley's testimony, at the point of her fall there was a clear, very slick substance on the floor which felt like soap or shampoo to the touch. Her testimony is corroborated by her daughter, Ms. Lolita W. White, who happened to be in the store at the time. The daughter also testified the substance on the floora clear puddle about four inches in diameterwas not water and in fact testified she saw no water on the floor. In contrast, the Winn-Dixie employee, a cashier, Ms. Debra Champagne, who cleaned up the floor after Ms. Riley fell, testified there was nothing on the floor but water and this water came from Ms. Riley's wet clothes which got the floor wet.
The manager of the store at the time, Mr. Englert, testified at the trial that a mop is always kept near the place where Ms. Riley fell and it is the duty of every employee to mop up anything they might see on the floor. He further testified that there is no one person hired by Winn-Dixie to keep the floor cleanrather, according to his testimony, keeping the floors clean is every employee's responsibility. He did not recall whether he checked the area to determine what had caused plaintiff to fall. His accident report was based on approximate times and said the area where plaintiff fell was last inspected at 7:30 o'clock P.M. (The fall was at about 8:15 o'clock P.M.).
In a slip and fall case the operator of the store may be liable to a tort victim for the negligence of his employees or of his customers in creating a hazard which causes the victim to fall and sustain injury. Prior to the state supreme court rulings in Kavlich v. Kramer, 315 So.2d 282 (La. 1975) and Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (La.1976) the injured victim could recover from the store operator only by proving the store operator or his employee caused the hazard and failed to take reasonable steps to remove the hazard. Since the Kavlich case, however, once the victim proves the hazard caused him to fall and he has sustained the injury, just as in a res ipsa loquitur case, the owner bears the burden of going forward with evidence to exculpate itself from the presumption it was negligent. Thus, once the plaintiff meets his burden of proof, to exculpate himself from negligence the store operator has to show (1) the hazard was not caused by one of his employees and (2) he exercised such a degree of care that he would have known under most circumstances of a hazard caused by customers. Brown v. Winn-Dixie Louisiana, Inc., 452 So.2d 685 (La.1984); Rose v. Winn-Dixie Louisiana, Inc., 474 So.2d 26 (4th Cir.1985); Hull v. Schwegmann Bros. Giant Supermarkets, Inc., 480 So.2d 1069 (5th Cir.1985).
In 1979, Louisiana, by Act No. 431, which became effective on August 1, 1980, adopted a pure comparative fault system.[1] *934 It was specifically designed to supercede our former contributory negligence doctrine (under which any degree of negligence of the injured party prohibited his recovery from the tortfeasor). Although the allocation of shares of negligence are imposed on the fact finder, the statute (C.C. art. 2323) does not set out with particularity guidelines as to how the allocation is to be accomplished. Watson v. State Farm, 469 So.2d 967 (La.1985). In Watson, supra, the Supreme Court held the trier of fact should, in determining the percentage or degree of fault, consider both the nature of the conduct of each party and the extent of the casual relationship between the conduct and the damages proven.
Pursuant to the provisions of Code of Civil Procedure article 1812 A, the following interrogatories as to liability were submitted to the jury and it answered them in the manner indicated:
"1. Was the defendant, Winn Dixie, at fault?
 X yes ___ no
If your answer is yes, go on to Question 2.
If your answer is no, stop here, sign this form and return to the Courtroom.
2. Was Winn Dixie's fault a proximate cause of the plaintiff's injuries?
 X yes ___ no
If your answer is yes, go on to Question 3.
If your answer is no, stop here, sign this form and return to the Courtroom.
3. Was the plaintiff, Estella B. Riley, at fault?
 X yes ___ no
If your answer is yes, go on to Question 4.
If your answer is no, skip Questions 4, 6, and 7, and answer Question 5
4. Was Estella B. Riley's fault a proximate cause of her injuries?
 X yes ___ no
If your answer to # 4 is yes, answer all remaining questions. If your answer to # 4 is no, skip questions 6 and 7 and answer question # 5.
* * * * * *
6. What percentage of negligence do you attribute to the plaintiff, Estella B. Riley?
90% * Go on to # 7.
7. What percentage of negligence do you attribute to the defendant, Winn Dixie?
10% *
* The percentages in questions 6 and 7 must TOTAL 100%."
Counsel for the plaintiff contends that since the jury found Winn-Dixie to be at fault and its fault was the proximate cause of the accident, the only issues as to liability are: (1) did the defendant carry the burden of proving plaintiff contributorily negligent and (2) if so, in what degree. From that premise, he argues the defendant failed to produce any evidence to substantiate a finding of contributory negligence, therefore, the jury's verdict as to the plaintiff's negligence is clearly wrong and manifestly erroneous. We do not agree.
Plaintiff's counsel's view of the jury's findings are at variance with the record. As may be noted from the interrogatories above quoted, the jury found both Estella Riley and Winn-Dixie at fault and that the fault of each was a proximate cause of plaintiff's injury.
In support of his contention that defendant bore the burden of proving plaintiff's contributory negligence, counsel cites Bridgewater v. Department of Corrections, 434 So.2d 383 (La.1983) and Avilez v. South Jefferson General Hospital, 403 So.2d 1260 (4th Cir.1981). Since the accident occurred prior to the effective date of *935 Louisiana's comparative negligence act, neither case is applicable here.
Under our present jurisprudence, plaintiff's burden to recover 100% of her damages was to prove by a preponderance of the evidence that the defendant's premises were hazardous and the hazardous condition was the cause of her fall and resulting injury. To absolve itself from all liability the store operator's burden was to show: (1) the hazard was not caused by one of its employees, and (2) he exercised such a degree of care against such hazards he would have known and removed the hazard under most circumstances. Brown, supra; Rose, supra; Hull, supra.
Unlike a bench trial (where the trial judge furnishes us with written reasons and hence the basis for his findings or conclusions), in a jury trial we never know why the jury found as it did or reached the conclusions it did. Nevertheless, although Louisiana appellate courts have jurisdiction over both law and facts, unless for articulable reasons we find manifest error, our standard of review is limited to determining whether there was evidence before the trier of the fact which, upon its reasonable evaluation of credibility, furnishes a factual basis for the fact finder's findings. Canter v. Koehring, 283 So.2d 716 (La. 1973). Under this standard of review, we are not at liberty to substitute our findings for those of the fact finder, although we believe they may be as reasonable or more reasonable than those of the initial fact finder. Rather, where the evidence before the trier of fact furnishes a reasonable basis for its finding, we are duty bound to uphold its findings. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
We have carefully reviewed the record here and cannot say the jury was clearly wrong or manifestly erroneous in finding both the plaintiff and defendant were at fault and the fault of both was the proximate cause of plaintiff's injury. Nor can we say it erred in allocating the negligence 90% to plaintiff and 10% to the defendant. Based on the evidence, the jury could, but not necessarily did, conclude the substance on the floor which caused plaintiff's fall was rain water brought in from the outside by the plaintiff or there was nothing on the floor and/or plaintiff slipped because her shoes were wet. Since plaintiff was aware of the inclement weather and should have known the risk of proceeding into the store without first drying off, the primary cause of the fall was allotted to her and the secondary cause to the defendant because it also knew of the inclement weather and should have provided better facilities for customers to dry themselves off at the doorway.
For the reasons stated, therefore, we affirm the jury's findings on liability and its percentage allottment of negligence between the plaintiff and defendant. We next consider the quantum issues.

QUANTUM
At the time of the fall, Ms. Riley did not appear to be seriously hurt. However, according to her testimony, immediately after she fell she experienced and began complaining of pain and stiffness in her neck and lower back and could not get out of bed for four days following the fall.
Initially, she consulted her family physician, Dr. Nathan Goldstein, on Wednesday, December 1st, 1983, who referred her to Dr. James T. Williams, an orthopedic surgeon. Dr. Williams first examined the plaintiff on December 1st, 1983 and diagnosed her as having arthritis of the neck and having sustained soft tissue injuries, contusions and strains superimposed on a pre-existing disease in the neck and hip. He treated her conservatively to July 13, 1983, the last date he saw her, a period of approximately eight months.
According to Ms. Riley, when Dr. Williams's treatment resulted in no relief, she saw Dr. Nelville J. Reehlmann, an orthopedic surgeon. Since he wanted to hospitalize her and she was unwilling, she went to see Dr. E. Ward Sudderth on August 15, 1983. From the inception he treated her conservatively. When she did not respond to his treatment, he referred her to Dr. *936 D.C. Mohnot, a neurologist, who examined her on February 14, 1984. Based on his examination, he concluded plaintiff's low back pain came from a possible herniated disc at L4-5. He recommended surgery immediately and referred her to Dr. Gustavo A. Gutnisky, a neurosurgeon for the surgery.
Dr. Gutnisky examined plaintiff at West Jefferson General Hospital on May 9, 1984 where he performed a "CAT Scan and lumbar myelogram." He testified the myelogram showed a "canal stenosis at the level of L4-5 with facets" while the CAT Scan revealed degenerative changes in the facet joints at L4-L5-S1. Based on these findings, he recommended surgery. A lumbar laminectomy was performed on May 15, 1985.
According to Ms. Riley, the surgery eased her pain somewhat and has allowed her to ambulate better but she is still not nearly as active as she used to be. She claims to have worked as a sitter for the elderly and as a housekeeper for over 17 years.
The evidence shows Ms. Riley continued working after the fall to September 2, 1983. Her employer, Ms. Coralee Phillips, testified that she employed plaintiff as a sitter for her elderly mother. She worked twelve hour shifts and her duties consisted of cooking, bathing and dressing her mother, changing the bed linen, washing clothes and doing other household chores. She corroborated plaintiff's testimony that she terminated her employment because the back pain prevented her from carrying out her duties.
Plaintiff's physicians, Dr. Gutnisky and Sudderth, testified plaintiff's injuries were the result of trauma and notwithstanding the surgery, plaintiff was at the time of trial totally and permanently disabled. In contrast, Dr. Battalora, who had examined the plaintiff once and then at defendant's request, initially diagnosed plaintiff's injury as a disc herniation. However, after having examined the operative report of the surgery, he changed his opinion to "back sprain-type injury" and expressed the opinion plaintiff was in better physical condition after the surgery than she was prior to the fall.
The following interrogatory was submitted to the jury:
"What is the total amount of damages, including all claims, you find that plaintiff in this case has suffered, without making any reduction for her own sub-standard conduct, if any?"
to which it replied:
"$30,000.00."
On the appeal, counsel for the plaintiff contends the damage award was inadequate. Although the jury did not itemize the damages, counsel argues the jury failed to award proven damages for medical expenses, loss of wages, and loss of future earnings, and made an inadequate award for general damages. He suggested the proper awards for plaintiff's injuries should be $250,000.00 for general damages and $134,575.00 for special damages. Although we do not agree with counsel's suggestions as to the amount of damages, we do agree the jury's awards were manifestly erroneous.
Applying the standard of review set in Reck v. Stevens, 373 So.2d 498 (La.1979), we note the following: Medical expenses incurred to date of trial were stipulated to be $19,138.00 and loss of earnings from termination of employment on September 2, 1983 to the date of trial was either $24,443.00 (under the plaintiff's expert's computation) or $18,660.00 (under the defendant's expert's computation). The difference between the two computations being federal income taxes, i.e., plaintiff's expert's figures were gross wages; defendant's expert's figures were net wages after deducting for taxes.
Additionally, plaintiff's expert estimated her future loss of earning capacity at $82,782.00 and defendant's expert's witness estimated her future loss of earnings at $46,082.00. Also, plaintiff's physicians estimated plaintiff's future medical expenses at $75.00 per month and her expert estimated the total to be $8,212.00.
*937 Given the medical evidence and the record before us, including the plaintiff's prior work history, plaintiff's damages should properly include an award for past due medical expenses and wages. Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968). At a minimum these are proven to be substantially in excess of the jury's total award of $30,000.00. Thus, the jury clearly abused its discretion and under the standards set for our review, we are bound to correct the awards.
In reaching a conclusion as to plaintiff's damages, the amount of proven special damages must be considered. The past due medicals of $19,138.00 were stipulated to and hence clearly proven. The only dispute as to past due wages is whether plaintiff's damages for past due wages should be her net or gross wages. Consistent with our previous ruling in Holmes v. Texaco, Inc., 422 So.2d 1302 (5th Cir.1982), we consider gross wages as the proper award.
Additionally, the evidence establishes plaintiff's earning capacity has been impaired. In computing future lost wages, Dr. Goodman, plaintiff's expert, used an annual income of $12,957.00, allowed an annual increase of 8.27% (based on U.S. CensusAverage Annual Increase in earnings of private household occupations in New Orleans), a work life expectancy of six years and used a 10.125% discount factor to arrive at the present value of $82,782.00. On the other hand, Dr. Boudreaux, defendant's expert, used a work life expectancy of 4.8 years, an annual increase of 5% and discount percentage of $9.5% to arrive at a present day value of $46,083.00. We believe defendant's expert's projection is more realistic.
The only evidence as to plaintiff's anticipated future medical expenses is her physician's estimate of $8,212.00. Since it is uncontradicted, we accept that amount.
For those reasons we set plaintiff's award for past due and future special damages as follows:

1) For medical expenses incurred
 prior to trial $19,138.00
2) For future medical expenses 8,212.00
3) Under the jurisprudence,
 plaintiff is entitled to gross
 wages of 24,443.00
4) For future loss of earnings 46,083.00
 __________
 Total Special Damages $97,876.00

Additionally, after a determination the trier of the facts has abused its discretion, we may look to prior awards to determine a range of awards for general damages where the injuries were similar to those sustained by plaintiff and make an award for general damages at the low end of the range. Landaiche v. Lou-Con, 461 So.2d 1107 (5th Cir.1984); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). Considering the cases submitted to us by the litigants, particularly the following: Johnson v. Wicks, 356 So.2d 469 (1st Cir. 1977)-$113,024.00; Williams v. City of New Orleans, 433 So.2d 1129 (4th Cir. 1983)-$125,000.00; Abshire v. Dubois, 422 So.2d 611 (3rd Cir.1982)-$100,000.00, we find the low range to be $100,000.00.
Therefore, we consider the jury's award of $30,000.00 for general damages to be inadequate and set same at $100,000.00.
Then considering plaintiff's total damages as $97,876.00 for special damages and $100,000.00 for general damages or a total of $197,876.00, and applying ten percent as the percentage of the total damages allocated to Winn-Dixie, we amend the trial court's judgment to increase the judgment in favor of plaintiff and against Winn-Dixie from $3,000.00 to $19,787.00 and as thus amended, affirm the judgment. All costs to be borne by the defendant.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] Art. 2323. When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.